BENJAMIN GARVIN'S ADM'RS v. JOHN STOVER.

See this case for circumstances under which the judgment was reversed because of the refusal of the Court to grant a new trial, on the ground that the appellee, who was a colonist in Peters' Colony, had abandoned his settlement.

Appeal from Ellis. Tried below before N. M. Burford, Esquire, appointed by the parties.

*Moore* and *Cravens*, for appellants. The appellee quietly acquiesced in Garvin's right to the land, and set up no claim to it until some time after the passage of the Act of the 10th of February, 1852, when on the 28th of May of that year, he first set up a claim to the land by filing a claim for it with Hedgecoxe, the agent of the colony contractors under said Act by which time, without ever having been within the colony I infer from the cases heretofore decided in this Court, (Overton v. Crockett, 12 Tex. R. 509 ; Patton v. Evans, Austin Term, 1855,) there had grown up in the minds of many, an erroneous opinion that the 3rd Sec. of the Act of 1850, (Hart. Dig., Art. 2231,) gave whomever might have first actually occupied a section of land within the colony, an unconditional right to the same, whatever may have been his acts subsequent to his settlement or that of others superinduced by his. The erroniousness of this opinion is however shown by the decisions of this Court in the cases referred to, and they I think fully show that the appellants under the law and evidence in this case, are entitled to the land in controversy, as the facts make it evident that the appellee left the land in the fall of 1847, and made no subsequent attempt to resume possession of it, and set up no claim to it, until the 28th day of May, 1852.

I also submit that the only proper construction to be given the Act of 1850, is that of a law to take effect *in presenti*, and that consequently the rights conferred upon the oldest settler (as is clearly manifest by the language of the whole Act, and particularly by the 3rd, 4th and 7th Secs. Hart. Dig., Art. 2231, 2232 and 2235,) are bestowed by the bounty of the State, upon the oldest settler upon the land, at the time of the passage of the Act ; or at most, before one who at the passage of the Act, was not in the actual occupation of the land, can claim the benefit of the same, he must show that he has such existing and continuing rights, that in the eye of the law he would be regarded as an actual settler upon the land at that time.

If this Act which was introduced to secure to all actual settlers the land to which they are entitled as colonists, should be so construed as to give vitality to dormant and forgotten equities, growing out of temporary settlements, and the like temporary removals, leaving the intention with which each settlement and removal was made to be determined by the Court, this Act would prove one to unsettle, instead of to secure colonists in their titles to their land, by sowing broad-cast throughout the colony seeds of litigation which in due season would fructify and bring forth their legitimate fruit in lawsuits and perjuries. These considerations doubtless operated upon the mind of the Legislature and induced them so to frame the Act as to give the land to the oldest settler, then having a settlement upon it, thus establishing a rule, readily understood and easily carried into effect, especially as the grant for the particular section of land given by the Act, came from the bounty of the State, and not in satisfaction of any equities that any one of the colonists had acquired to it against the Government.

*J. J. Good*, for appellee. 1st. Stover being the first settler upon the land in controversy, is entitled to it.—(Hart. Dig., Art. 2231 ; Overton vs. Crockett, 12 Tex. R. 509.)

2d. Garvin having taken possession as the agent or tenant of Stover, cannot dispute the title of Stover. (Adams on Eject. 247, by Tillinghast ; 2 Greenl. Ev. Sec. 305.)

3d. Stover's declarations and arrangements at the time of his visit to Arkansas and his subsequent return, are parts of the res gestae, and show that he had not abandoned his claim. (2 Greenl. Ev. Sec. 108.)

4th. As the Court below improperly rejected the declarations made by Stover at the time of leaving for Arkansas and on his return, explanatory of his absence, this Court will examine into them in making their decision.

J. M. Crockett, also for appellee. The Judge below refused to admit as evidence, the declarations of Stover, on the eve of his departure, on a journey to another State, to show his intention to return. This was error and is the subject of appellee's bill of exceptions. (See 1 Greenl. Ev. Sec. 108 ; Part 1st Cowen & Hills Note to Phil. Ev. pages 218 and 220. And this doctrine applied in the State v. Skidmore, 5 Tex. R. 469, and the same recognized in the Heirs of Hollman v. Peebles, 1 Tex. R. 689.)

Enough, however, of his declarations were admitted to show clearly (when coupled with his acts,) an intention to return. (See authorities above, and Hardy v. De Leon, 5 Tex. R. 235 –6 ; McIntyre v. Chappell, 4 Tex. R. 197.)

He left his place and other property, in the care of Garvin, who undertook to gather his crop and protect his place and property until his return, and now he cannot dispute Stover's title. (See Hardy v. De Leon, 5 Tex. R. 243.)

If the statement of facts does not show that a previous suit had been instituted by Stover, against this same party, for this land, and which was pending for several Terms of the District Court, I will be permitted to inform this Court, that such is the fact. It, of course, would constitute no material fact of

Stover's title, but may remove or prevent disfavor in the minds of the Court, on account of laches.

LIPSCOMB, J. This was a suit for land in Peters' Colony, and the controversy was on the priority of settlement, in which the main question was whether the appellee, who was the plaintiff in the Court below, had or not abandoned his first settlement, on which he claimed the right of preference. The law on the question seems to have been correctly given by the Court, under the decisions of this Court in Overton v. Crockett, (12 Tex. R. 509,) and the case of Patton v. Phebe Evans, guardian, decided at the last Term at Austin, and not yet reported, (15 Tex. R. 363;) and, on the evidence, the jury found a verdict for plaintiff, negativing the fact of abandonment.

There was an error in the charge, if applied to evidence offered by the defendant, but not when applied to the evidence offered by the plaintiff, as it was in this case. The plaintiff offered to prove his own declarations and conversations when about leaving his home, to prove that he intended to return, and to repel the presumption, arising from his leaving, that it was an abandonment of his settlement, which was properly overruled by the Court. But had the declarations of an intention to abandon been offered against him by the defendant, it would have been certainly competent testimony. The defendant offered no such evidence, and he could not avail himself, by his bill of exceptions to the charge of the Court on rejecting the evidence offered by the plaintiff.

The propriety of overruling the motion to set aside the verdict of the jury, requires more consideration. It presents the question whether the verdict is sustained by the evidence. The evidence, as presented by the statement of facts outside of the documents, is meager and indefinite. The documents show that the appellant and appellee both procured their certificates from the Commissioner Ward on the same day, under the Act of

21st Jan'y, 1850 ; that both certificates issued on the 24th May, 1850, and for want of sufficient evidence of location and survey, required a survey to be made by the deputy or county surveyor, to identify the land claimed, as settlers in the colony. It is shown that appellant had a survey, as required, made on the 20th of July, after the issuance of his certificate, and it is shown that appellee did not have a survey made and nothing done to fix the identity of the land claimed by him, until after the passage of the Act of February, 1852, when, on the 28th of May thereafter, he set up his claim for the land in controversy, by filing his claim with Hedgecoxe, the agent of the Colony contractors. The parol evidence shows that the appellee settled on the land in controvercy in 1844 or 1845, where he remained with his family until the Fall of 1847, when he left to go to Arkansas ; that when he was about leaving he told Garvin that he wanted him, (Garvin,) to take care of his place and his other property, and to gather and put his crop of corn away for him, and take care of it until he should get back, to which Garvin assented and promised to do so ; that during the latter part of the winter or Spring of 1848, said Garvin moved upon the place of Stover and resided upon it until he died, and that his family has resided upon it ever since ; that after Stover left for Arkansas, Garvin gathered the corn and put up two hundred bushels for Stover, and reserved sixty bushels for himself for his services ; that in the Spring of 1848, Stover returned to the neighborhood, to one Baggett's, a witness, in the edge of Dallas county ; that witness Baggett frequently was on and passed the place of Stover, and knew that Garvin was in possession of it ; that during the absence of Stover, Garvin spoke of Stover's place and said he had got him to take care of it and his other property for him, and that he left various articles of property in his cabin and locked it up ; that Garvin spoke of going on to the Stover place, and did go on to it, as stated above. Patton, a witness, proves that he first saw Stover, after his return from Arkansas, in Waxahatchie, in 1850,

about the time Commissioner Ward was issuing certificates to the colonists ; that Stover told witness that he had been to Arkansas and had stopped awhile on his return to this place in Collin county. It was also in proof, that Garvin made a new field on the land of ten or fifteen acres ; that the cabin of Stover was burned down before his return ; that upon his return, his family was not with him. It was proved by one witness, that the land cultivated by Garvin, was on the place known as Stover's, but on a different part of the section.

The counsel of the parties not agreeing on the statement of facts, it was made by the Judge, and made up of sketches of the evidence only. There is no doubt that to the Judge who had heard the evidence, these sketches were well understood, but to this Court, without that advantage, we are fearful that it is not certain that we do fully understand the facts as proven. It is, however, evident that the question in this controversy was on the priority of settlement, out of which another would arise, whether the priority had not been lost, by an abandonment thereof, or forfeited by a non-compliance with the requisitions of the statute of 1850, giving preference to the oldest settler. The 3rd Section of the Act above referred to (Hart. Dig. Art. 2231,) provides "that when two or more colonists have settled on one and the same section, half section or fraction of a section, the oldest settler shall be entitled to the preference." The 6th Section of the same Act (Art. 2234, Hart. Dig.) provides that each settler shall be confined to the section, half section, or fraction of a section, as heretofore surveyed, if the field notes can be obtained. But if such field notes cannot be obtained, the County or District Surveyor of each County or District may be required to survey the section, half section or fraction of a section for such settler ; and the surveyor, in such case, shall be governed by the laws defining the duties of County Surveyors." The 10th Section provides, " that in " the event the field notes of the surveys cannot be obtained " by the first day of April in the year eighteen hundred and

" fifty, the County or District Surveyors shall proceed to re-
" survey said lands, and in so doing shall have respect to, and
" be governed by, surveys heretofore made ; and the said
" County or District Surveyor as the case may be, shall, every
" three months, make a return of his field notes accompanied by·
" a correct map of such surveys made by him, to the Commis·
" sioner of the General Land Office ; his legal fees to be paid
" by the person for whose benefit such survey is made."

It is perhaps necessary to state, that the lands embraced in
the Colonial Contract had been surveyed by the contractors,
but there being some doubt whether the settlers could, in every
case, furnish the Commissioner evidence of the surveys, so made
by the contractors, they were given until the first day of April,
1850, to furnish these field notes of the Company's survey,
after which time they were required to have the land claimed
by them surveyed by the County or District Surveyor. Both
the claimants appeared before the Commissioner subsequent to
the expiration of the time given to furnish this survey. The
certificates both required a survey to identify the land claimed,
and, as we have seen, Stover never had a survey at all, and it
seems that after the passage of the Act of 1852, he claimed by
filing his certificate with the agent of the Company appointed
under the Act of 1852.

Had Garvin's survey been returned to the General Land
Office, by the surveyor, he would have been entitled to demand
a patent. But it was not returned, and the question is, shall
he lose that advantage over his adversary, on account of the
failure of the surveyor to make the return of his survey. Sto-
ver did nothing after obtaining his certificate, until after the
passage of the Act of 1852. He then preferred his claim, de-
pending upon the Company's survey to identify it.

The 4th Section of the Act to which we have last referred,
is believed to be the only one that has any relation to the case
before us. It is as follows : That it shall be the duty of each
and every colonist, before the fourth day of August, 1852, to

file with the agent of the said Company, a full and particular description, under their hand and seal, of the land they claim and are entitled to in said colony, as colonists, by the number of the section, or parts of the section, township and range, base and meridian, if located and claimed as located and surveyed by said Company in their surveys aforesaid ; but, if otherwise, by map and field notes of their said survey correctly made out ; which description of land and maps and field notes of surveys made by said colonist, with the names of the persons claiming the same, said agent shall return to the Commissioner of the General Land Office. Provided, that a failure of the said agent to return any or all of the said described maps and field notes aforesaid, which shall actually be filed with him in his office, as aforesaid, shall not render vacant any land the description, field notes and maps of which he shall fail to return as aforesaid." Garvin, the appellant, did offer to make a return of his survey and field notes and map as made out by the surveyor, and the agent would not receive them, because, as he alleged, his office had been forcibly seized and taken from him. What are the rights of the parties under a fair construction of the several provisions of the Acts of 1850 and 1852, are very important, and, it is probable, would seriously affect the land titles within the different Colonies, having similar provisions ; and these Statutes do not appear to have been discussed or brought to the view of the Court, and not argued by the appellee in this Court ; and believing that the case will have to be remanded, we have referred to them to elicit a full discussion, whenever they should be properly presented.

The only question that we believe to be properly before us for revision is, was the evidence sufficient to support the verdict of the jury ? The Court below decided that it was, and over-ruled the motion for a new trial, and in so ruling we believe that it erred.

There is no question but the appellee was the prior occupant, but we believe that he lost his possession by abandon-

ment. He left the country with his family for Arkansas, in 1847 ; he himself returned, for how long a time is not proven, but alone, without his family, in 1848, but made no effort to resume his possession. He is not heard from again until May, 1850, when he is again in the colony at Waxahatchie. After that, until 1852, of his residence we have no information, nor whether he has ever brought his family back. His taking his family off with him, his long absence, created so strong a presumption of an abandoment of the country, that it required proof very strong to rebut it. But appellee says that appellant was agent of the appellee, and held possession for him, and that his possession was continuous. This agency, by the evidence of the appellee, was a limited one, and expired with the limitation ; it was only until his return, which occurred the next year, and nothing is shown to prove that it was further extended, but the facts would tend to a contrary conclusion. Appellant was living on it ; had cleared and was cultivating a part of the land, but on a different part of the section ; no demand proven, of the possession, leaving the presumption that he only came out for the purpose of closing his business. On this ground, that the intention of remaining was not proven, and that under the circumstances, before stated, the burthen of proof was on him, to show that circumstances that he could not control had prevented his return, and claiming that possession that he had left temporarily only, the judgment must be reversed and cause remanded.

Reversed and remanded.