## CARLTON, CLARK & CO. V. JOHN H. BALDWIN.

General assignments, in trust for the benefit of creditors, with the rules pertaining to them, apart from statutory regulations, are the creatures of courts of equity; and though, from our judicial organization and mode of procedure, a jury may have passed upon the facts, yet in reviewing a case of this sort, the principles which direct courts of equity in relation to the subject, are peculiarly applicable.

The validity of assignments often involves the most complicated consideration of facts, in connection with the terms of assignment, which have to be submitted to a jury; but their verdict should be set aside, when contrary to the principles of equity, which originated, uphold, and control assignments.

A general assignment, for equal distribution among all creditors, almost necessarily delays some of them; but how far that may be necessary, in order to accomplish the honest object of an equal distribution, must depend upon the character and situation of the property. Any special provision, likely to produce delay, or to complicate the transaction, or subject the property to loss, raises a strong presumption of fraudulent intent, which should annul the deed, unless explained.

A provision in a deed, giving the trustee the discretion to sell the goods on credit, is a prominent badge of fraud; especially, when coupled with the further discretion, to dispose of the goods at private sale.

The limitation of the responsibility of the trustee, so as to excuse him from being answerable for the "negligence and misdoings" of others, is a badge of fraud; and this becomes still more forcible, when taken in connection with the selection, by the assignor, of the attorneys to be employed by the assignee.

The secret reservation of over $1,100, for the payment of a debt alleged to be due by the assignor to his wife, only a small part of which was the proceeds of the sale of articles exempt by law, (where the manner in which it was spent tended to show that it was not reserved in order to be appropriated in payment of the debt due the wife, if her claim could be recognized as a valid debt,) is also a badge of fraud.

If the assignor have, (under provisions not in themselves necessarily fraudulent,) covertly devised, so as indirectly to retain control of the funds, for the purpose of forcing the creditors into a consent to the assignment, the deed will be void.

APPEAL from Calhoun. Tried below before the Hon. Fielding Jones.

Appellee claimed the goods levied upon, by virtue of an assignment to him, from the defendant in execution, in trust for

the benefit of the creditors of said defendant. This deed was executed on the 4th day of February, 1854, and among other things, provided that the trustee should proceed, in the manner he should deem best for the interest of all the creditors, to sell and dispose of all the property and effects assigned by the deed, to such persons, for such prices, and upon such terms and conditions, for cash or on customary credits, at private sale or public auction, as to his judgment might appear best, and most for the interest of all concerned; and to collect the proceeds of such sales, and to realize the most that might be practicable, from the bills, bonds, notes, accounts, and claims conveyed by said assignment; in doing which, the said trustee should employ as attorneys, James A. Simpson and W. H. Woodward, who should be by him paid, out of such proceeds, a reasonable compensation. It was also stipulated in said assignment, that the trustee should fulfill all and singular the trusts reposed in him, but should not be answerable for the negligences or misdoings of any other person.

Upon the trial, the appellants read in evidence, *without objection*, a letter addressed to them by the defendant in execution, from Orville, Dallas county, Alabama, on the 9th of August, 1854, in which, after giving a lengthy detail of the condition and situation of his business, the amount of his liabilities and assets, the losses sustained, &c., he proceeded to say :

"Messrs. Peet, Sims & Co. have employed lawyers to "set aside the assignment, in order that they might recover the "full amount of their judgment obtained in the last court at "Indianola, against Bateman & Salles; but even if they do "set it aside, I still think they will be compelled to share an "equal portion with the other creditors. I think it would "be to your interest, to make an arrangement with Peet, "Sims, & Co., to let the assignment stand, as they can secure "their claim by garnisheeing Bateman's dividend in my as- "signee's hand, as I am indebted to Bateman about $1,600, "which is included in the assignment. I am resolved to do all "I can for my creditors, but I cannot get into business, while I "am under embarrassments. If my creditors will release me,

Carlton v. Baldwin.

"I have an offer of a partnership with a worthy planter, who is "now in business and wants a partner, and who has some capi-"tal and a good credit; but embarrassed as I am now, it is "out of my power to do anything for myself or creditors. I "hope you will consider it to the interest of both parties, and "release me, and they shall not be the losers thereby.

"I will now give you a statement of the funds reserved from "the assignment, &c., which would not be prudent to show to "those who oppose the assignment:

| | | |
|---|---|---|
| "Amount of goods reserved and sold for cash, | - | $250 00 |
| "Household furniture, sold at auction, | - - | 280 00 |
| "Amount of accounts reserved and collected, after "deducting expenses while travelling in the "country, to collect notes and sell goods reserved, | | 45 00 |
| "Amounting in all to - - · - - | | $575 00 |
| "Reserved a note, not yet collected, about - | - | 500 00 |
| "Amount of accounts, not yet collected, | - - | 48 00 |

"I do not think that more than two hundred, or two hundred "and fifty dollars, can be realized out of the two last items; I "am not sure that more than ten or twenty dollars will be "realized. The above reserves were made on account of nine "hundred and eighty-two dollars belonging to my wife, which I "used in my business, including the purchase of household fur-"niture. I have also been compelled to expend, out of the "above, as follows:

| | | |
|---|---|---|
| "Paid J. A. Simpson, lawyer's fees, - - - | | $100 00 |
| "Gave my wife, to defray her expenses to Louisiana "and Arkansas, - - - - - - | | 83 00 |
| "Paid two months' board and washing, after the "assignment for the benefit of my creditors, | - | 50 00 |
| "Cash paid C. Etter & Co., at Indianola, | - - | 36 00 |
| "Expenses to Orville, where I now am, | .- - | 50 00 |
| "Amount of cash expenses out of the above reserve, | | $319 00 |
| "Cash realized, - - - - - | | 575 00 |
| "Cash remaining on hand, | - - - | $256 00 |

"Being all that remains of wife's funds. Hoping to hear from "you soon, I remain, very respectfully, yours, &c.,

"L. E. SALLES.

"I will here below, give you a list of creditors as included in "the assignment." (Then followed the names and places of residence of his creditors.)

There was a verdict and judgment for the defendant. Motion for a new trial overruled.

*F. S. Stockdale,* for appellants.

*Seawell* and *Baldwin,* for appellee. The deed is not in that class of assignments which have been considered violative of the rules in bankruptcy, in other countries; and we have no bankrupt law, technically speaking. If in force at all, the statute is but an insolvent law. The second exception taken to the deed is of no greater force than the first. The powers are not unusually full; and plenary powers will be supported and controlled by the chancellor. (1 Hovenden on Frauds, 492.)

The first clause having any reference to other persons to be employed by the assignee about the trust, has reference only to the employment of attorneys, and paying them, as well for writing the deed of assignment, as in prosecuting the suits probably to become necessary in collecting the choses in action assigned; competent counsel, who of course should be held, and are held, to a responsibility for their acts.

The exemption (in words) of the assignee from responsibility for the acts of others, only expresses what the law implies.

These exceptions were, at most, but circumstances to be considered by the jury—and were considered by them, with the evidence and charge of the court.

If the court did not err, in permitting the deed to go to the jury, then most assuredly it committed no error in refusing the motion for a new trial, unless such a violent presumption of fraud arises from the letter of Salles to Carleton, Clarke & Co., as that it extends to all the parties interested in the deed of

assignment—the assignor, the assignee, and the *cestuis que trust*—and is conclusive in itself. (Bryant v. Kelton, 1 Tex. Rep. 415.)

This letter is produced under very suspicious circumstances. It was, also, subsequent in date to the assignment, and ought not to have been received in evidence at all. (Conolly v. Lord Howe, 5 Ves. Jr. Rep. 700.)

The letter, however, is not evidence of any fraudulent intent. It shows no reservation, for the benefit of the assignor, out of the property assigned; but rather that all his property had been assigned, except a small portion, barely necessary to meet his present absolute necessities, and those of his family; and that to reimburse in part, the money of the wife used in his business.

The wife, being a creditor of the husband, surely should not be deferred to all other creditors. Much less should it be objected, that only a small portion of her debt was paid; just enough for the personal, absolute wants of the family, to supply which, the husband's means were no longer competent; and which only served to rid the case of the only "badge or sign of fraud," resolved in Twine's Case, that could possibly find a parallel in this case. (1 Smith's Lead. Cases, 1; Murray v. Riggs, 15 Johns. Rep. 571.)

The property reserved from the assignment, consisted principally of choses in action, and household furniture, and therefore was not subject to the rules adopted under the statute of frauds. (Dundas v. Dutuy, 1 Ves. Jr. Rep. 196; Rider v. Kidder, 10 Id. 360; 2 Kent's Com. 441–42; Story's Eq. Jur. §§ 366, 367, and note.)

In assignments, of the character of the one under consideration, the material inquiries are :

1st. Could the assignor have delivered the property assigned *bonâ fide* to his creditors, in payment or part payment of their just debts, at the time of the assignment? If Salles had that right and power, then Baldwin, his assignee, has the same right to appropriate the same property to the payment of the same debts. (Brooks v. Marbury, 11 Wheat. Rep. 78.)

2d. Are the rights of creditors, not parties to the record of the suit, to be considered and protected in this cause? If so, the court will sustain their rights, and take care that no injustice is done, had fraud been proved, even against both Baldwin and Salles. (Ibid; 2 Hovenden on Frauds, 137.)

The case of Brooks v. Marbury, 11 Wheat. Rep. 78, is especially entitled to examination. In this case, *like* that, the real interest in the controversy is in the creditors; *unlike* that, the deed in this case is truly for the benefit of *all* the creditors, and presents strong equities in support of the deed; while in that case, the interest in the contest was between *attaching* creditors and *preferred* creditors, and was "a mere question of "legal preference, unmixed with any equitable considerations "whatever." (Opinion of Chief Justice Marshall, in Brooks v. Marbury, *ubi supra*.)

ROBERTS, J. The appellants having recovered a judgment in June, 1854, against Louis E. Salles, and an execution having been levied upon goods, wares and merchandise in possession of the appellee, the same was claimed by him, and bond was given to try the right of property.

The evidence, issues, and charge of the court, in this case, were substantially the same as they were in the case of Baldwin v. Peet, Sims & Co., (*supra* 708,) just decided in this court, and the verdict and judgment were rendered in favor of the appellee, which is exactly the reverse of that in the other case. A motion for a new trial was made by the appellants, on the ground that the verdict was contrary to the law and evidence; which was overruled by the court. This ruling being assigned as error, constitutes the only question in the case.

The case being before us now upon the facts, it is to be determined, whether they show the deed to have been made with a fraudulent intent as to purchasers. In this we may be much aided by the opinions delivered in courts of equity, where this subject is most usually adjudicated, and where the court determined the facts as well as the law of the case. General assign-

ments in trust, for the benefit of creditors, with the rules per-
taining to them, apart from statutory regulations, may be said
to be the creatures of courts of equity. In reviewing a case of
this sort, the principles which have directed courts of equity
in relation to the subject, are peculiarly applicable, notwith-
standing it has happened, from our judicial organization and
mode of procedure, that a jury has passed upon the facts of the
case.

However single and definite the question usually to be deter-
mined,—was the assignment made with a fraudulent intent to
hinder and delay creditors?—the commercial transactions, from
which the answer must be deduced, as exhibited both in the
stipulations of the deed, and in extrinsic evidence, often involve
the most complicated considerations. And the considerations
are still much more complicated, when it becomes necessary
for the jury to solve the question, whether or not the terms of
the assignment, in connection with the other facts, lead to the
conclusion, that the assignment is a device contrived for the
purpose of indirectly retaining such control, advantage or benefit,
as will render the deed void.

As these are questions of fact, to be submitted to the jury,
there are no means of sustaining the principles of equity, which
originated, uphold, and control assignments, but by setting
aside verdicts, when they are found contrary to them.

A general assignment, by a failing debtor, of his effects, to
be distributed *pro rata* amongst his creditors, almost necessarily
delays some of the creditors, especially as in this case, where
judgments are obtained in a few months after the assignment is
executed. This produces an injury as to such creditors. How
far this delay may be necessary, in order to accomplish the
honest object of an equal distribution, must depend upon the
character and condition of the property assigned, and of the
debts to be secured and paid. (Hardy v. Skinner, 9 Ired. Law
Rep. 191; Mitchell v. Beal, 8 Yerg. Rep. 134; Farmers' Bank
v. Douglass, 11 Sm. & Marsh. Rep. 469; Ward v. Trotter, 3
Monr. Rep. 1; Hindman v. Dill, 11 Ala. Rep. 689.)

Any special provisions, liable to produce unnecessary delay, or to complicate the transaction, or subject the property to loss, must be regarded as raising a strong presumption of a fraudulent intent, or covert advantage reserved, which should annul the deed, unless satisfactorily explained by other facts.

One of the prominent badges of fraud, is the provision in the deed, which gives the trustee the discretion to sell the goods on a credit. This is held, in some States, to be fraud *per se.* (Burrill on Assignments, 197–8, note 1.) It is so held, because its tendency to hinder and delay creditors is so forcible and certain, as to raise a conclusive presumption that such effect was intended. (Barney v. Griffin, 2 Comst. Rep. 365.) And where it has not been held conclusive, it has been regarded as a circumstance to be well considered. (Abercrombie v. Bradford, 16 Ala. Rep. 560.)

As the trustee is usually the friend, and may be appointed because he is under the influence, of the assignor, this unlimited discretion of selling on a credit, especially when coupled with the further discretion to dispose of the goods at private sale, may be used as an indirect means of control, for the assignor's benefit, to the injury of the creditors. The reason why it was given in this case, is not explained by the facts. It is not shown that some of the debts were not due for some considerable time, or that the goods were not in condition to be immediately put in the market. (Cunningham v. Freeborn, 11 Wend. Rep. 240.)

The limitation of the responsibility of the trustee, so as to excuse him from being answerable for the "negligence and misdoings" of others, is a badge of fraud. (Burrill on Assignments, 208–9.) And where it has been sustained, it has been construed, not to exempt him from the exercise of proper prudence in the selection of agents in the business, and a due supervision of their acts. (Ashurst v. Martin, 9 Port. Ala. Rep. 576.)

But this becomes still more forcible, when taken in connection with the appointment of attorneys by the assignor. Why thrust upon the assignee particular attorneys, either to advise or

assist him in the business? There is no explanation, either of the limitation of the responsibility of the trustee, or of the selection of attorneys.

The reservation of over eleven hundred dollars, only a small part of which was the proceeds of the sale of articles exempt by law, done secretly as it was, is a badge of fraud. And the manner in which most of it has been spent, tends to show that it was not reserved to be appropriated to the wife, in payment of a debt due her, if her claim was such as to be recognized as a valid debt. (Burrill on Assignments, 168, 175, 225.)

A very important part of the letter given in evidence, is that which asks the interposition of one of the creditors to procure the rest to release the debtor from his liabilities; and this may furnish an explanation of the reason, why so many special provisions were placed in the deed of assignment; and such unlimited discretion given to the trustee, and attorneys were selected; so that the uncertainty and remoteness of realizing anything, and the possible power indirectly retained over the funds, might force the creditors into a consent to the assignment, and a release of the surplus of their claims. Such control, covertly devised, (under provisions not in themselves necessarily fraudulent,) for such a purpose, would render the deed fraudulent as to creditors. (Gazzam v. Poyntz, 4 Ala. Rep. 374.)

We see no reason in the facts of the case, as now presented, why the assignment should not have been a plain, direct and immediate application of the effects of the debtor to the payment of his creditors; and the terms of the assignment, variant from this, being badges of fraud, not being explained, but their force being rather increased by extrinsic facts, we are of opinion, that the deed cannot be sustained as a valid assignment, but that it was made in fraud of creditors, and should certainly have been so found by the jury. Another trial possibly may present it in a different light. The judgment is reversed and the cause remanded.

                              Reversed and remanded.