**Darrell DYSON, Petitioner,**

v.

**The OLIN CORPORATION, Respondent.**

**No. C–3548.**

Supreme Court of Texas.

June 19, 1985.

Doherty & Williamson, Larry J. Doherty and Jimmy Williamson, Houston, for petitioner.

Kronzer, Abraham, Watkins, Nichols, Ballard & Friend, Dale Friend, Fulbright & Jaworski, Sawnie A. McEntire and Tom Alan Cunningham, Houston, for respondent.

McGEE, Justice.

The issue presented is whether the court of appeals, in disposing of the "insufficiency" point, erred in interpreting the elements of gross negligence as stated in *Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 922 (Tex.1981). Darrell Dyson sued the Olin Corporation after suffering personal injuries when the vehicle he was driving collided with a crane ("cherry-picker"), which was owned and operated by Olin. The trial court, based on the jury's verdict, rendered judgment in favor of Dyson and awarded actual and punitive damages. The court of appeals determined that there was insufficient evidence to support the jury's finding of Olin's gross negligence and remanded for new trial, with one judge dissenting. 678 S.W.2d 650 (Tex.App. 1984). We reverse the judgment of the court of appeals and remand the cause to that court.

The cherry-picker was parked on the side of the road and extended some four feet into Dyson's lane. Dyson was attempting to pass the cherry-picker but ran into it

when he swerved back into his lane to avoid oncoming traffic. The jury found Olin negligent in failing to do one or more of the following: (a) post a flagman; (b) erect barricades; and (c) provide flashing lights. Dyson was also found negligent in failing to keep a proper lookout and make timely application of his brakes. The jury determined Dyson to be 25 percent negligent and Olin to be 75 percent negligent. In addition, Olin was found to be grossly negligent in one or more of the following respects: failing to post a flagman, erect barricades, provide flashing lights and in leaving the cherry-picker on the road. Judgment was rendered in favor of Dyson and he was awarded $16,404.17 in compensatory damages and $115,000.00 in punitive damages.[1]

■ The court of appeals sustained an insufficiency of the evidence point, challenging the jury's findings of gross negligence. Initially, we recognize that this court does not have jurisdiction to review a point of error challenging factual insufficiency of the evidence. *Tippett v. Brannon*, 493 S.W.2d 511, 511 (Tex.1973); Tex.Rev. Civ.Stat.Ann. art. 1728 (Vernon Supp.1985). This court does, however, have jurisdiction to determine whether the court of appeals used the correct rules of law in reaching its conclusion. *Harmon v. Sohio Pipeline Co.*, 623 S.W.2d 314, 315 (Tex.1981).

■ The court of appeals properly determined that an insufficiency of the evidence point required the intermediate appellate court to consider and weigh all the evidence and to reverse only if the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *In re King's Estate*, 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951). In addition, the court of appeals correctly stated the definition of gross negligence as follows:

The essence of gross negligence is not the neglect which must, of course, exist.

What lifts *ordinary* negligence into *gross* negligence is the mental attitude of the defendant; that is what justifies the penal nature of the imposition of exemplary damages. The plaintiff must show that the defendant was consciously, i.e., knowingly, indifferent to his rights, welfare and safety. In other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrated that he didn't care. Such conduct can be active or passive in nature.

*Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 922 (Tex.1981).

The court of appeals, however, interpreted the *Burk Royalty* holding as "[s]tated another way, the Plaintiff must produce evidence to prove two elements: (1) the defendant knew of the existence of an *unreasonable* peril and (2) that defendant's acts or omissions demonstrated he was indifferent to the safety of the plaintiff." 678 S.W.2d at 657 (emphasis added). In applying the law to the facts, the court of appeals reviewed the evidence supporting the gross negligence finding, particularly Olin's common practice of leaving the cherry-picker parked along the road partially obstructing one lane of traffic, and Olin's failure to place warning signs or barricades. This was then balanced with evidence that the cherry-picker was parked in plain view during the daytime. The court also looked to the jury's finding that Dyson failed to keep a proper lookout as evidence to support their conclusion that a driver, keeping a proper lookout, could have avoided the accident. The court of appeals concluded that Olin "under all the circumstances, did not know that parking the 'cherry-picker' in plain view created an unreasonable peril" and sustained the insufficiency point.

*Burk Royalty* does not require a new and independent examination of the unreasonable nature of the peril. Rather, the

---

1. The trial court determined that Olin had failed to plead contributory negligence and, therefore, did not reduce Dyson's recovery. The court of appeals disagreed with the trial court's interpretation of Olin's pleadings and held that Dyson was given fair notice of the contributory negligence claim.

focus is on the mental attitude of the person charged and whether acts or omissions by that person display a conscious and deliberate disregard for the interest or safety of others. *Burk Royalty* at 922; *International Armament Corp. v. King,* 686 S.W.2d 595, 597 (Tex.1985). The court of appeals injected an additional element of proof by re-evaluating the reasonableness of Olin's conduct in determining the gross negligence issue.

The judgment of the court of appeals is reversed and the cause is remanded to that court for further proceedings consistent with this opinion.

ROBERTSON, J., concurs with opinion with which RAY, J., joins.

KILGARLIN, J., concurs with opinion.

ROBERTSON, Justice, concurring.

I concur in the result reached by this Court. However, the purpose of this concurrence is to address a problem of constitutional dimension which was not raised by the parties.

We are remanding this cause to the court of appeals for it to again review the sufficiency of the evidence to support the jury's finding on gross negligence. In doing so, this Court once again reiterates the standard of review set forth in *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). The time has come for us to take a serious look at this standard.

Article V, section 6 of the Texas Constitution provides that the decisions of the courts of appeal "shall be conclusive on all questions of fact brought before them on appeal or error." This section plainly does not give to a court of appeals the power to substitute its thought processes for those of a jury. Indeed, this section was never intended to enlarge the powers of the courts of appeal, but was intended to restrict the jurisdiction of the supreme court to questions of law. *Choate v. San Antonio & A.P. Ry. Co.,* 91 Tex. 406, 44 S.W. 69 (1898).

Even before this provision was amended to the Constitution in 1891, this Court wrestled with the problem of determining how an appellate court can review the facts. *See, e.g., Missouri Pacific Ry. Co. v. Somers,* 78 Tex. 439, 14 S.W. 779 (1890); *Willis v. Lewis,* 28 Tex. 185 (1866); *Love v. Barber,* 17 Tex. 312 (1856). After the constitutional amendment, this Court repeatedly interpreted article V, section 6 as giving to courts of appeal the power to review for sufficiency of the evidence. *See, e.g., In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951); *Electric Express & Baggage Co. v. Ablon,* 110 Tex. 235, 218 S.W. 1030 (1920). We have indicated that courts of appeal are to weigh all the evidence to determine if the jury verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. Courts of appeal have followed this standard and rightfully so.

However, I am now concerned that to the extent our prior interpretation of article V, section 6 has given to courts of appeal the power to weigh all the evidence, it is antagonistic to the constitutional guarantee of trial by jury. Article I, section 15 of the Texas Constitution is clear and unambiguous: "The right of trial by jury shall remain inviolate." We should not interpret the nebulous provision of article V, section 6 in such a way as to diminish or impair this constitutional guarantee of jury trial.

> The jury, not the court, is the fact finding body. The court is never permitted to substitute its findings and conclusions for that of a jury. The jury is the exclusive judge of the facts proved, the credibility of the witnesses and the weight to be given to their testimony.

*Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792, 796 (1951).

Courts are not free to reweigh the evidence and set aside a jury verdict merely because the judges feel that a different result is more reasonable. "Trial by record before an appellate court, even assuming an accurate record and conscientious review, has little resemblance to a jury trial...." Green, *Jury Trial and Mr. Justice Black,* 65 Yale L.J. 482, 486 (1956). Some would argue that there exists a dis-

tinction between a court reviewing the sufficiency of the evidence and a court substituting its thought processes. However, it is extremely difficult to articulate what the possible distinction could be. I conclude that it is a distinction which exists in semantics and theory only but which does not exist in reality. If a court is weighing the evidence, then it is substituting its thought processes.

It is not of controlling significance that on "insufficiency" points a court of appeals can only remand for new trial; such action still represents a serious infringement of the *inviolate* right to trial by jury. A jury trial is of little importance if an appellate court can remand until it gets a jury to agree with it.

I do not now propose an alternative interpretation for article V, section 6.[1] However, whatever this provision means, it cannot mean that a court of appeals can weigh the evidence and substitute its thought processes for those of a jury. Such an interpretation conflicts with the constitutional guarantee of article I, section 15.

Because this issue was not raised by the parties, I reluctantly agree with the Court's holding which reverses and remands this cause to the court of appeals. However, on remand of this cause or in a future cause involving an "insufficiency" point, I would give serious consideration to the question of whether the court of appeals exercised its fact jurisdiction in such a way as to undermine the jury verdict in contravention of our Constitution. The right to trial by jury is a fundamental feature of our system of jurisprudence; it is the best means yet devised for the determination of facts. The question is whether we will continue to adhere to a prior interpretation of article V, section 6 which has allowed appellate courts to usurp the jury's function.

RAY, J., joins in this concurring opinion.

KILGARLIN, Justice, concurring.

I concur in reversing the judgment of the court of appeals. The only purpose of this concurrence is to address two matters contained in the court of appeals opinion that are not discussed in our opinion—not discussed because they were not brought forward as error. However, I fear that unless mention is made of the appellate court's writing on those two points, this court's approval could be inferred by the notation that will hereafter accompany the court of appeals opinion, "reversed on other grounds." Both matters deal with sanctions for discovery abuse.

First, the court of appeals pronounces that "[t]he selective use of sanctions follows from the basic rule that sanctions are not to be used to punish." 678 S.W.2d at 655. This view is reflective of an older line of cases, and does not find support among current commentators. Indeed, this same appellate court, as well as other courts, has subsequently affirmed the concept that discovery sanctions should be invoked both to punish and to deter others from abusing the discovery process. *See Jarrett v. Warhola* (Tex.App.—Houston [14th Dist.] 1985, writ ref'd).

The concept of utilizing sanctions as punishment or deterrence has developed support over the last ten years. In *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976), a federal district court had concluded that a plaintiff had not acted in good faith in failing to answer written interrogatories after seventeen months, in spite of numerous extensions and admonitions from the court. Accordingly, the district court dismissed the cause of action. The Circuit Court of Appeals reversed, holding that the dismissal was an abuse of discretion. The United States Supreme Court, in reinstating the trial court's dismissal, said:

But here, as in other areas of the law, the most severe in the spectrum of sanc-

---

1. For one possible alternative, see Garwood, *The Question of Insufficient Evidence on Appeal,* 30

Tex.L.Rev. 803, 813–814 (1952).

tions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.

*Id.* at 643, 96 S.Ct. at 2781. The Court noted that should the circuit court decision remain undisturbed, plaintiffs might faithfully comply with all future discovery orders. However, the Court also observed that other parties to the lawsuit would thereafter feel at liberty to flout other discovery orders of other district courts.

Shortly after *National Hockey League,* utilizing sanctions as a deterrent or punishment was given credence by a Texas court. In *Southern Pacific Transportation Co. v. Evans,* 590 S.W.2d 515, 518 (Tex.Div.App. —Houston [1st Dist.] 1979, writ ref'd n.r. e.), *cert. den.,* 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980), the court of appeals, in affirming a trial court's action of striking pleadings and defaulting the defendant, Southern Pacific, said "[a]lthough many cases hold that the primary purpose of sanctions is to insure that discovery is accomplished rather than to punish; [citations omitted], the abuse of the discovery rules has caused a trend in federal and state courts towards using sanctions to deter violations of the rules by other litigants."

More recently the same court, in *City of Houston v. Arney,* 680 S.W.2d 867 (Tex. App.—Houston [1st Dist.] 1984, no writ), reaffirmed its position in *Southern Pacific Transportation Co. v. Evans.* In another case, although conceding that the main purpose of sanctions was to obtain compliance, the punishment aspect of sanctions was recognized. *Lindley v. Flores,* 672 S.W.2d 612 (Tex.App.—Corpus Christi 1984, no writ).

Commentators have been equally vocal in advocating sanctions for purposes other than obtaining compliance. Justice Spears of this court observed in *The Rules of Civil Procedure: 1981 Changes in Pre-Trial Discovery,* 12 St. Mary's L.J. 633, 651 (1981), that "more frequent punishment for failure to comply would ensure better compliance." This writer stated in Kilgarlin & Jackson, *Sanctions for Discovery Abuse Under New Rule 215,* 15 St. Mary's L.J. 767 (1984):

> In recent years, a new concept of the office of sanctions has clearly emerged in answer to new challenges facing the Texas judicial system. Through decisions and rule changes, our courts have recognized that discovery sanctions must do more than just obtain compliance of the recalcitrant party. The most important of the newly-embraced purposes is deterrence of future violations. Moreover, courts have held that sanctions are properly used to insure that the abuser does not profit by his wrong, and that his adversary does not suffer by it. The sanction power may now also be used to protect an innocent party from an unreasonable burden and expense caused by misuse of discovery. Finally, prevention of needless delay and consumption of court time has been approved as a legitimate sanction goal.

*Id.* at 774–75. *See also* Note, *The Emerging Deterrence Orientation in the Imposition of Discovery Sanctions,* 91 Harv.L. Rev. 1033 (1978).

Now, this court, but one month ago, has refused the application for writ of error in *Jarrett v. Warhola.* With that refusal we have adopted as if it were the language of this court that sanctions are to be used "not merely to secure compliance with discovery rules, but further to penalize those who have abused the discovery process."

Second, and of less import, it should be noted that the court of appeals approved an interpretation of former Rule 168, Tex.R. Civ.P., requiring a party to identify a witness in advance of trial; and, if not named, the witness should not be permitted to testify. 678 S.W.2d at 655. While there was a Rule 168 requirement to identify testify-

ing expert witnesses, there was no similar requirement as to lay witnesses. *Employers Mutual Liability Insurance Co. of Wisconsin v. Butler*, 511 S.W.2d 323, 324–25 (Tex.Civ.App.—Texarkana 1974, writ ref'd n.r.e.), correctly interpreted former Rule 168, saying "[t]here is a recognized distinction, however, between 'persons having knowledge of relevant facts' and 'witnesses who will be called [to testify] at the trial'." Mixing of the two terms can only lead to confusion. Discovery of the first is permitted; discovery of the second is not.

The court of appeals likewise does not correctly state the law under current Rules 166b and 215, Tex.R.Civ.P. Although it is true that the Advisory Committee to the Supreme Court in its recommendations leading to the April 1, 1984 rules amendments did advocate advance naming of all potential witnesses, expert or not, the supreme court in promulgating the rules rejected this proposal.

I commend the court of appeals in this case for its subsequent opinion in *Warhola* and its changed attitude toward the proper office of sanctions. However, it is regrettable that other courts continue to adhere to the theory that the sole purpose of sanctions is to obtain compliance. This theory results in procrastination and gamesmanship, with the recalcitrant party confident that whatever period of delay has elapsed and however much harm his dilatory tactics may have caused his adversary to suffer, as long as the response to discovery is filed before court action striking pleadings, all is well. It is this sort of attitude that encourages continued disrespect and abuse of the discovery process, that clogs our courts and frustrates the ends of justice. I hope that the imprimatur of this court on *Warhola* will serve as an encouragement to our judiciary to utilize sanctions to thwart those abuses that all too often occur in the discovery process.

Having given vent to my strong feelings about the use of sanctions, I join in reversing the judgment of the court of appeals.