Anthony Paul CROPPER, Petitioner,

v.

CATERPILLAR TRACTOR
COMPANY, Respondent.

No. C–6076.

Supreme Court of Texas.

May 25, 1988.

Rehearing Denied July 13, 1988.

Russell H. McMains, McMains & Constant, Corpus Christi, Pat Maloney, Law Offices of Pat Maloney, San Antonio, for petitioner.

David S. Kidder, Eugene W. Brees, II and Debora Beck McWilliams, Thompson & Knight, William Powers, Jr., Austin, for respondent.

WALLACE, Justice.

In this personal injury action, we decide whether a court of appeals has the authority to remand a cause for a new trial when it concludes that a jury's failure to find in favor of a party on a particular issue is "against the great weight and preponderance of the evidence." We hold that a court of appeals has the authority to review a "failure to find" in the same manner in which it may review a jury's findings. TEX. CONST., art. V, § 6. We further hold that this review does not violate the right of trial by jury. TEX. CONST., art. I, § 15.

Anthony Paul Cropper was severely injured while operating a Caterpillar 651B Water Wagon, and brought suit against the Caterpillar Tractor Company (Caterpillar) on theories of negligence and strict products liability. The evidence at trial showed that Cropper was spraying water on an open field in order to keep the amount of dust from his employer's nearby mine at an acceptable level, and ran over the unfolded metal tracks of a backhoe tractor being repaired by another employee. After the water wagon rolled over the tracks, the impact of the wagon's cab returning to the ground forced the operator's chair to bottom out, resulting in a compression fracture of Cropper's lower back and other injuries.

The jury answered all issues favorably to Cropper, including the following defensive issue submitted at Caterpillar's request:

Was ANTHONY CROPPER negligent in the operation of the Water Wagon on the occasion in question?

ANSWER: *No.*

The trial court rendered judgment on the jury's verdict, awarding Cropper over $2.5 million in actual damages and assessing $250,000 in punitive damages against Caterpillar.

On appeal Caterpillar contended, among other things, that: (1) the jury's *failure to find* contributory negligence was against the great weight and preponderance of the evidence; (2) the evidence supporting several of the jury's *findings* was factually insufficient; and (3) the damages awarded by the jury were excessive and not supported by the evidence, thus authorizing the court of appeals to order a remittitur. The court of appeals reversed and remanded for new trial, sustaining the first of these contentions without passing upon the remainder of Caterpillar's points of error. 720 S.W.2d 824.

■ Although Cropper contends that Caterpillar waived this first contention by failing to assign it as error in its motion for new trial, we find no merit to this argument. Caterpillar contended in its motion for new trial that the jury's negative answer to the above issue was "so against the great weight and preponderance of the evidence as to be manifestly unjust"; and thereby preserved this complaint. TEX.R. CIV.P. 324. We granted Cropper's application for writ of error to consider the following questions:

(1) when a jury refuses to find in favor of a party on a particular fact issue, and that party had the burden of proof at trial on this particular issue, is it within the authority of the court of appeals to review the jury's action in this respect and, upon concluding that the jury's "negative finding" was against the great weight and preponderance of the evidence, remand for a new trial?

(2) if such power exists, does it violate the right of trial by jury?

(3) if such power exists and does not violate the right of trial by jury, was that power properly exercised in this case?

Although these questions are somewhat intertwined, our initial focus is upon the source and parameters of the courts of appeals' jurisdiction over fact questions.

## I.

### *The constitutional origin of appellate court jurisdiction over fact questions.*

The Texas Constitution confers upon the courts of appeals "appellate jurisdiction ... under such restrictions and regulations as may be prescribed by law," and further provides that "the decision of said courts shall be conclusive upon all questions of fact brought before them by appeal or error." TEX. CONST. art. V, § 6. These two clauses have independent significance, and have quite different consequences upon the allocation of jurisdiction between this court and the intermediate appellate courts. The former operates as a general grant of "appellate jurisdiction," and is in fact the only clause in Article V which purports to vest judicial authority in the intermediate courts. The latter, which will be referred to as the "factual conclusivity clause," functions not as a grant of authority to the courts of appeals but as a limitation upon the judicial authority of this court. *Choate v. San Antonio & A.P. Ry. Co.*, 91 Tex. 406, 44 S.W. 69 (1898).

In one of the earliest reported decisions of this court, we held that a court operating under a general grant of "appellate jurisdiction" had the power to review fact questions. *Bailey v. Haddy*, Dallam 376 (1841). Then, as now, the constitution provided that the right of trial by jury should remain "inviolate." REPUB. OF TEX. CONST., Ninth Declaration of Right (1836). That same constitution vested this court with "appellate jurisdiction," just as our present constitution confers such authority upon the courts of appeals. REPUB. OF TEX. CONST., art. IV, § 8. Construing the constitution and related statutes, we explicitly recognized that the grant of "appellate jurisdiction" empowered this court to review both fact and law questions, although we recognized that such powers might not exist in a common law court

reviewing a jury-tried case. Dallam at 378. The court concluded that in a jury-tried case, its powers of review embraced those of a common law court as well as a civil law court or court of equity, subject to the restriction that the right of trial by jury should remain inviolate. *Id.; see also Republic v. Smith,* Dallam 407 (1841) (recognizing that the court could review both the fact and the law questions in a criminal case).

In the fifty year interval between the *Bailey* decision and the constitutional amendments of 1891, we continued to recognize that this court had the power to review jury verdicts on factual issues. Due to the court's deference to jury verdicts in general, the cases where review actually led to reversal are far less in number than the cases where we merely acknowledged this power of review. Nonetheless, they exist. The cases where this power was apparently exercised include *Hall v. Layton,* 16 Tex. 262 (1856) *appeal after remand* 25 Tex. 204 (1860); *Garvin v. Stover,* 17 Tex. 292 (1856); *Chandler v. Meckling,* 22 Tex. 37 (1858); *Carlton v. Baldwin,* 22 Tex. 724 (1859) *appeal after remand* 27 Tex. 572 (1864); *McQueen v. Fulgham,* 27 Tex. 464 (1864); *Willis v. Lewis,* 28 Tex. 185 (1866); *Weisiger v. Chisholm,* 28 Tex. 780 (1866); *Harnage v. Berry,* 43 Tex. 567 (1875); *Houston & Tex. Cent. Ry. Co. v. Knapp,* 51 Tex. 569 (1879); *Redus v. Burnett,* 59 Tex. 576 (1883); *Houston & T.C. Ry. Co. v. Schmidt,* 61 Tex. 282 (1884); *Dimmit v. Robbins,* 12 S.W. 94 (Tex.1889); and *Missouri Pac. Ry. Co. v. Somers,* 14 S.W. 779 (Tex.1890). In *Somers,* the court briefly summarized the nature of its authority to reverse jury verdicts on fact issues:

> Although this court has the power to review a case upon the facts, and to set aside a verdict which has evidence to support it, that power has been reluctantly exercised. But it is the right and duty of this court to set aside a verdict, when it is against such a preponderance of the evidence that it is clearly wrong.

14 S.W. at 779.

By creating the courts of appeals and vesting them with "appellate jurisdiction," the 1891 amendment to the constitution conferred upon those courts the *same power* over fact questions that this court exercised prior to that amendment. *Choate,* 44 S.W.2d at 69–70. Thus, the court below, in reviewing the jury's verdict in favor of Cropper, was possessed of the same powers that this court could previously exercise prior to 1891, the same powers alluded to in *Somers. Id.* In the exercise of those powers, the court below concluded that "the jury's finding that Cropper was not negligent in his operation of the water wagon was so contrary to the great weight of the evidence as to be manifestly unjust." 720 S.W.2d at 826. Although the court below was technically incorrect in implying that it was reviewing a jury's *finding,* there can be no doubt that it had the power to reverse and remand unless there is some dispositive distinction between appellate review of "findings" and appellate review of "non-findings" or "failures to find."

## II.

### *The authority of the courts of appeal to review a "non-finding."*

In *Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex.1986), the court recently intimated in *dicta* that there might be some such distinction between review of findings and nonfindings. While recognizing that the constitution empowers courts to "unfind" a jury's findings, the court observed that it was "more difficult to rationalize" why a non-finding should be reviewable under a great weight and preponderance standard. 715 S.W.2d at 634. This difference between findings and non-findings had previously been described as "a distinction which exists in semantics and theory only but which does not exist in reality." *Dyson v. Olin Corp.,* 692 S.W.2d 456, 458 (Tex.1985) (Robertson, J., concurring). If there is any inference in *Pool* that there is a distinction between review of findings and review of non-findings, we lay that question to rest.

In the fifty years of case law preceding the adoption of the 1891 constitutional amendments, this court never once indi-

cated that it lacked the authority to review a jury's "non-finding." However, this issue could only rarely arise in those days, since so-called "non-findings" are merely the byproducts of the system of special issue submission. When cases were submitted upon general charges, as was largely the practice in the nineteenth century, the jury was called upon to make one of only two possible "findings": it either "found" for the plaintiff or "found" for the defendant. Yet, prior to 1891, when we reviewed and set aside a general verdict because the jury failed to find a particular fact, we necessarily reviewed its "non-finding" since a general verdict for either plaintiff or defendant impliedly resolved every contested issue in favor of the verdict winner. *Hardy v. DeLeon,* 5 Tex. 211 (1849); *Hamilton v. Rice,* 15 Tex. 282 (1855). It is perfectly clear that regardless of which party had the burden of proof at trial, and regardless of which party prevailed before the jury, the verdict loser had the right to assert on appeal that the jury's verdict was either not supported by the evidence or was against the great weight and preponderance of the evidence, as appropriate.

The *Somers* case demonstrates this principle. There, the plaintiff had sued his employer for an injury he received, and we had earlier set aside a jury verdict in his favor and remanded for new trial. *See* 14 S.W. 741 (Tex.1888). On retrial, the principal dispute was whether the plaintiff had assumed the risk of injury, and the jury refused to find that he had assumed the risk. We set aside that verdict, which was based upon the jury's "non-finding" of assumption of risk, because it was "against such a preponderance of the evidence" that it was "clearly wrong." 14 S.W. at 779.

Another illustrative case is *Dimmitt v. Robbins,* 12 S.W. 94 (Tex.1889). In that case, Robbins brought suit against Dimmitt, after his failure to pay an alleged loan. Dimmitt generally denied the indebtedness, and also alleged that any promise he had made to Robbins was vitiated by duress or fraud. It is clear that Dimmitt had the burden of proof at trial on these latter allegations. The jury returned a verdict for Robbins, rejecting Dimmitt's conten-

tions of duress and fraud. Upon reviewing the evidence, the court set aside the jury's verdict in favor of Robbins and remanded for new trial, observing that the jury's failure to find fraud and duress was "manifestly against the great weight of the testimony." 12 S.W. at 99.

In *Houston & T.C. Ry. Co. v. Schmidt,* 61 Tex. 282 (1884), the court confronted a situation where, as in the instant case, the jury had failed to find contributory negligence on the part of the plaintiff. The defendant argued on appeal that either the evidence showed that Schmidt was not injured in the manner he had alleged, or that the injury he received was the result of his own contributory negligence. 61 Tex. at 285. The court sustained both of these contentions, holding that the verdict was "contrary to the evidence" and "against the great preponderance of evidence." *Id.* at 286.

The advent of issue submission and the decline of the general charge had no effect whatsoever upon the courts of appeals' authority to review a jury's non-findings. Our adoption of issue submission through the rules has not been and should not be construed to have limited the authority of the courts of appeals to review jury-tried cases. TEX.R.CIV.P. 816. In *Parrish v. Hunt,* 331 S.W.2d 304 (Tex. 1960), we unanimously held that Article V, § 6 of the Texas Constitution required the appellate court to properly pass upon contentions that a jury's non-findings were against the great weight and preponderance of the evidence. *Id.* at 305–6. In *Traylor v. Goulding,* 497 S.W.2d 944 (Tex. 1973), we reaffirmed our holding in *Parrish,* and reversed and remanded to the court of appeals so that it could properly pass upon the plaintiff's contention that the jury's non-findings were against the great weight and preponderance of the evidence. *Id.* at 948.

More recently, we reaffirmed the existence of such authority in the courts of appeals in *Pool v. Ford Motor Co.,* 715 S.W.2d at 634. In that case, as here, the jury had refused to find that the plaintiff

was contributorily negligent, and the court of appeals held that this "failure to find" was against the great weight and preponderance of the evidence. Despite language in the opinion of the court indicating some discomfort with the holding, we recognized that the court of appeals had such authority to remand the case for new trial.

In sum, we have held that regardless of the manner in which the case was submitted to the jury, the court of appeals' jurisdiction extends to all fact questions in the case, whether the jury has expressly or impliedly answered "yes" or "no" to a particular question. Given our recent tendency to favor broad issue submission, a contrary rule would be simply unworkable. Under the current practice of issue submission, defensive issues may be submitted by instruction or be otherwise combined with non-defensive issues, provided that the burden of proof is properly placed. *Lemos v. Montez,* 680 S.W.2d 798, 800 (Tex.1984). If we countenanced this distinction between "findings" and "non-findings," we would greatly complicate the process of appellate review, since it would frequently be impossible for a court of appeals to determine whether a jury's response to such a broad issue was motivated by its reviewable "finding" or its nonreviewable "non-finding" of one or more of the sub-issues. We decline to depart from our previous holdings, or to visit such dilemmas upon the courts of appeals. We hold that the court of appeals may reverse and remand a case for a new trial when it concludes that the jury's "failure to find" is against the great weight and preponderance of the evidence.

## III.

*The right of trial by jury and appellate review of a jury's non-finding.*

It is well established that an appellate court cannot merely substitute its judgment for that of a jury, because the court cannot exercise its constitutional authority to the detriment of the right of trial by jury, which is of equal constitutional stature. It has been suggested that when a court of appeals engages in determining whether a jury's "non-finding" is against the great weight and preponderance of the evidence, it must necessarily substitute its thought process, if not its "judgment," for that of the jury. *Pool,* 715 S.W.2d at 634. Yet, in that same opinion, we upheld the authority of the court of appeals to review such a "non-finding." *Id.*

Today, we reaffirm the *holding* of *Pool.* The limitations we have imposed upon the courts of appeals are more than adequate to assure that the right of trial by jury shall remain "inviolate." TEX. CONST. art. I, § 15. The historical safeguards of that right are found in the deferential standards of review applied, *see e.g., Houston & T.C. Ry. Co. v. Schmidt,* 61 Tex. 282 (1884); *Willis v. Lewis,* 28 Tex. 185 (1866); and the prohibition against rendition of judgment upon a "great weight" or "factual insufficiency" point of error, *Choate,* 44 S.W. at 69–70. Recently, we have created an additional safeguard by requiring the courts of appeals to set forth in detail the evidence in the case along with its reasons for concluding that the jury's verdict was contrary to the evidence, if it so concludes. *Pool,* 715 S.W.2d at 634–5. However, it is clear that when a court of appeals properly reaches a conclusion that a verdict is against the great weight of the evidence, it may return the case for trial before a different jury without violating the right of trial by jury.

The fact that the court of appeals might engage in "thought processes" akin to the jury's, as noted in *Pool,* does not establish a violation of the right of trial by jury. *Texas & New Orleans Ry. Co. v. Syfan,* 44 S.W. 1064 (Tex.1898). Moreover, in light of our rejection of the so called distinction between the review of "findings" and "non-findings," our decision in *Hopson v. Gulf Oil Corp.,* 150 Tex. 1, 237 S.W.2d 352 (1951) is dispositive. In response to a contention that the appellate courts' "factual insufficiency" review of a jury's finding was unconstitutional, we said:

Review of the jury's verdict by the Court of Civil Appeals under its jurisdiction over the facts, with reversal for want of sufficient evidence, does not

amount to denial of the right to trial by jury. The Court of Civil Appeals does not and cannot substitute fact findings of its own for the findings of the jury, but in exercising its jurisdiction over the facts the Court of Civil Appeals may reverse the trial court's judgment and remand the case for another trial when it finds that the verdict is so contrary to the great weight and preponderance of the evidence as to be clearly wrong. The power thus exercised is the same as that exercised by the trial court when it sets aside the jury's verdict on account of insufficient evidence and awards a new trial. And this practice is not a denial of the right of trial by jury. *Choate v. San Antonio & A.P. Ry. Co.*, 91 Tex. 406, 409–410, 44 S.W. 69.

*Id.*, 237 S.W.2d at 358; *accord Schaff v. Verble*, 240 S.W. 597, 602 (Tex.Civ.App.— San Antonio, 1922) *aff'd* 251 S.W. 1023 (Tex.Comm'n App.1923, judgmt adopted).

We long ago recognized that an occasional "corrupt, biased or silly verdict is not enough for condemnation" of the jury system. *Bailey*, Dallam at 380. No one would argue that the constitutional right of trial by jury should or could be abrogated by this court, merely because the court reached the conclusion that too many juries were reaching clearly wrong decisions. It is no different to suggest that we should or could restrict or abolish the courts of appeals' constitutional authority to review fact questions, merely because there are occasional opinions that reflect too little deference to the judgment of the jury. *See Pool*, 715 S.W.2d at 635 (discussing such "occasional" opinions). The right of trial by jury and appellate court review of fact questions have peacefully co-existed for almost one hundred and fifty years, and are thoroughly rooted in our constitution and judicial system. Aside from the inescapable fact that this court cannot amend the constitution, we are not prepared to sacrifice either for the benefit of the other.

## IV.

### *Proper exercise of appellate court review.*

■ The court below clearly sustained Caterpillar's contentions that the jury's failure to find contributory negligence was against the great weight and preponderance of the evidence. 720 S.W.2d at 826–7. However, it is suggested that there is language in the opinion of the court of appeals indicating that it improperly *found* Cropper was contributorily negligent and thereby effectively foreclosed the jury's consideration of that issue on remand. The language of the opinion indicating this purported "finding" is as follows:

A jury will have to determine, of course, the degree to which this conduct on Cropper's part contributed to cause the accident. Such a determination has not been made because that issue was contingent upon the jury's affirmative answer to the contributory negligence issue.

720 S.W.2d at 827. Cropper argues that this language establishes that the court of appeals either conclusively determined the *fact* of Cropper's contributory negligence, or held that Cropper was contributorily negligent as a matter of law.

We do not agree with Cropper's interpretation of the court of appeals' disposition of the case. Viewing the opinion of the court of appeals as a whole, its language in context, and its judgment that the cause should be remanded for trial, it appears that the holding of that court is that the "non-finding" of the jury is against the great weight and preponderance of the evidence. *Tippett v. Brannon*, 493 S.W.2d 511 (Tex.1973). To the extent that the above quoted language could be viewed as settling the issue of Cropper's contributory negligence, we disapprove that language.

■ Cropper also argues that we should reverse the judgment of the court of appeals and remand to that court, because it failed to comply with the dictates of *Pool v. Ford Motor Company*. In *Pool*, we held that a court of appeals should "detail the evidence relevant to the issue in consideration and clearly state why the jury's finding ... is so against the great weight and preponderance as to be manifestly unjust." 715 S.W.2d at 629. Further, we stated that the court of appeals' opinion "should state

in what regard the contrary evidence greatly outweighs the evidence in support of the verdict." *Id.*

In his motion for rehearing, Cropper brought to the attention of the court of appeals certain testimony and evidence that was not referred to by the court in its opinion and which somewhat contradicted the version of the facts recited by the court in its opinion. *Cf. Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). Further, the evidence specifically referred to in Cropper's motion lent substantial support to the jury's verdict. Cropper has thus preserved his complaint that the court of appeals' opinion does not comply with the guidelines established by this court in *Pool v. Ford Motor Company.* We sustain this point of error.

The judgment of the court of appeals is reversed and the cause is remanded to that court for further consideration in light of this opinion.

ROBERTSON, J., dissents in an opinion joined by RAY and MAUZY, JJ.

ROBERTSON, Justice, dissenting.

For the reasons stated in my dissent on motion for rehearing in *Hurlbut v. Gulf Atlantic Life Ins.,* 749 S.W.2d 762 (Tex. 1988), I dissent from the court's opinion today. I cannot and will not agree to join an opinion which, in effect, despite its claims to the contrary, adheres to the position that a select group of individuals, namely appellate judges, are better able to determine the credibility of witnesses and the facts of any given case than are a group of community citizens sitting as jurors. But, more specifically, I write this dissenting opinion to highlight several points which the majority opinion brings to my attention.

A brief detour through the history of the Texas court system is helpful in understanding the matters at hand. Before the 1891 amendments to the Texas Constitution, this court exercised what the majority opinion terms general "appellate jurisdiction." Undoubtedly, as case law reveals, this court exercised jurisdiction over *factual and legal* issues. I do not take issue with the majority opinion on this matter. When the Texas Constitution was amended in 1891, jurisdiction over fact questions was conferred upon the newly-created civil appellate courts. TEX. CONST. Art. V, § 6. In *Choate v. San Antonio & A & P Ry. Co.,* 91 Tex. 406, 44 S.W. 69 (1898), this court stated that the purpose of the amendment of art. V, § 6 was not to enlarge the power of the courts of appeals over questions of fact, but rather to restrict in express terms the jurisdiction of the supreme court and confine the supreme court to questions of law. Therefore, in determining the extent to which courts of appeals may now review a jury verdict for factual sufficiency, the critical question is whether this court exercised review of jury verdicts for factual sufficiency prior to 1891. It is my analysis of this issue which separates my opinion from that of the majority.

Prior to the 1891 amendment to the Texas Constitution, it is apparent, and the majority opinion so agrees, that this court exercised its factual review power with great deference toward jury verdicts. *See Briscoe v. Bronaugh,* 1 Tex. 326 (1846) (where question is one of fact to be ascertained by jury, from weighing evidence and degree of probability, appellate court will not interpose for purpose of granting new trial unless it be in order to remedy some *manifest error*); *Carter v. Carter,* 5 Tex. 93 (1849) (court, and especially appellate court, will not set aside jury verdict, merely because evidence might not be deemed, by judge, sufficient proof of the disputed fact); *Long v. Steiger,* 1 Tex. 460 (1852) (jury verdict must clearly appear to be wrong to induce appellate court to set it aside); *Love v. Barber,* 17 Tex. 312 (1856) (evidence must palpably and entirely fail to support in the verdict before the court may set aside jury verdict). While the terms used at that time to describe this court's review of evidence are quite different from the terms used now, it is clear from a reading of the cases that this court indulged in factual review of a kind far more analogous to what we now call a "no evidence" standard. There are very few au-

thoritative cases which would allow this court, at that time, to review the evidence on a standard similar to our "sufficiency of the evidence" or "great weight and preponderance" standard. The sheer number and overall impact of all the cases this court decided prior to 1891 suggest that this court did not visualize itself as vested with the power to review a jury verdict on anything suggestively close to "insufficiency of the evidence." The 1891 amendments conferred upon the courts of civil appeals only such powers over facts as this court had previously exercised. This court did not reweigh the evidence in a case or review it for what we term mere "insufficiency purposes." Accordingly, the courts of appeals should not now be entitled to exercise authority beyond what this court possessed before 1891.

I take exception to the majority's reliance upon *Carlton v. Baldwin*, 22 Tex. 724 (1859), *appeal after remand*, 27 Tex. 572 (1864); *McQueen v. Fulgham*, 27 Tex. 464 (1864); *Willis v. Lewis*, 28 Tex. 185 (1866); and *Weisiger v. Chisolm*, 28 Tex. 780 (1866). All of these cases were decided during the general period when Texas was one of the confederate states or while it was controlled by a "reconstruction court." Reliance upon authority from this era should be discouraged. Official matters of the State of Texas were in discord and decisions of this court are generally thought to be less authoritative from that time period. *See* M. BONER, A REFERENCE GUIDE TO TEXAS LAW AND LEGAL HISTORY 29–32 (1976); NORVELL, ORAN M. ROBERTS & THE SEMICOLON COURT, 37 TEX.L.REV. 279 (1959). Moreover, I find equally unauthoritative the majority's reliance upon *Missouri Pacific Ry. v. Somers*, 78 Tex. 439, 14 S.W. 779 (1890), to describe the nature and extent of authority that a court of appeals has over fact questions. *Somers* states that this court could set aside a jury verdict when it was against the preponderance of the evidence. 78 Tex. at 441, 14 S.W. at 779. What authority does *Somers* cite for such a proposition? *Somers* cites *Willis v. Lewis*, which, as mentioned earlier, is of questionable authority in itself. *Somers* also cites

*Dimmitt v. Robbins*, 74 Tex. 441, 12 S.W. 94 (1889). Not only does *Dimmitt* fail to cite the origin of authority for this proposition, a careful reading will show that although the court used the phrase "sufficiency of the evidence," it was really asking whether there was *"any* evidence" to support the jury's finding as to the amount of a debt. *Dimmitt*, 74 Tex. 440–41, 12 S.W. 98–99.

The court's opinion lends one half of one page to the true issue in this case. According to the majority opinion, *Somers* stands for the proposition that a court of appeals may review a jury verdict on a standard of preponderance of the evidence. Then, based upon the questionable authority the majority opinion maintains that the court of appeals in this case could conclude that "the jury's finding that Cropper was not negligent in his operation of the water wagon was so contrary to the great weight of the evidence as to be manifestly unjust." 720 S.W.2d at 826. Not only does the majority opinion miss the mark as to the issue in this case, it relies upon questionable authority to establish the answer to the crucial issue of whether this court prior to 1891 exercised factual review over jury verdicts in the nature of "against the preponderance" of the evidence or "against the great weight" of the evidence. My review of the pre–1891 cases reveals that this court did not exercise any type of factual review over jury verdicts that was even akin to the type of power now being exercised by the courts of appeals. Somewhere along the path of law, the courts of appeals have strayed beyond their legitimate power.

The majority opinion also contends that the original grant of general "appellate jurisdiction" to this court, and then in 1891 to the court of appeals, authorized not only review over questions of law, according to the common law tradition, but review over facts, according to the civil law tradition. Assuming this to be true, it still does not explain how the courts of appeals enlarged their power over facts to the point that they act as a limiting factor on the right of trial by jury. At civil law in civil cases

there was no tradition of a right to trial by jury; cases were tried solely to a judge. *See* J. MERRYMAN, THE CIVIL LAW TRADITION, 112–21 (2d ed. 1985). Consequently, on appeal, in accordance with the civil trial tradition, only facts found by a judge were subject to review by an appellate court. Therefore, in the civil law system, appellate review of facts would never offend any right of trial by jury, as there was none. Thus, even if one accepts the majority opinion's reasoning that the Texas appellate system merged civil and common law concepts, the same reasoning should extend so to allow appellate courts to review facts only in those cases tried to a judge. Certainly, this proposition is perfectly consistent with the majority's notion of appellate review by a civil law-common law merger; yet this proposition has the advantage of maintaining an individual's right of trial by jury.

Additionally, *Bailey v. Haddy*, Dallam 376 (1841), a case which the majority relies upon as authority for the proposition that courts vested with general "appellate jurisdiction" are empowered to review facts, cannot be characterized as authorizing the type of factual review in which the court of appeals now engages. At that time, there was no statement of facts nor any court reporter. The appellate court reviewed merely a statement certified by the trial judge as containing the substance of the testimony, but not detailing the evidence in any manner. Therefore, in *Bailey*, the appellate court could not be engaging in any process of weighing or reweighing the evidence because the evidence was not before them. It is a quantum leap from the type of factual review indulged in in *Bailey* to the factual review indulged in by the court of appeals in this case. Indeed, it is a leap supported by very little authority.

This case reminds me somewhat of *Musser v. Smith Protection Services, Inc.*, 723 S.W.2d 653 (Tex.1987). *Musser* was a libel case in which the "trial judge, twelve jurors, one court of appeals justice, and three supreme court justices" did not represent the "ordinary reader." *Id.* at 656 (Robertson, J., dissenting). I find a similar fallacy at work here. A trial judge, twelve jurors,

and three supreme court justices perceive the facts a certain way; whereas, the court of appeals and six supreme court justices view it in another. The readily apparent factor that separates the perceptions of the two groups of individuals is that one group includes twelve citizens who come to a courtroom with inquiry and vigor for the proceedings and the other group contains solely professional judges who come jaded by past judicial experiences. For this reason, I do not necessarily believe appellate judges are superior judges of character or facts. The people of Texas felt that way too when they adopted their constitution. Although the jury system is an imperfect system, it is clearly the best system in the world for deriving the truth of facts. I recognize that sometimes a jury may return what we perceive as a less than reasonable verdict; however, procedures are in place by which a trial or appellate judge may stifle those jury verdicts which are *clearly wrong*. Otherwise, the jury system remains the best alternative.

Finally, I find it particularly distressing that the majority opinion attributes to me certain thoughts and statements that simply do not exist. The majority opinion states that the "difference between findings and nonfindings had previously been described as a 'distinction which exists in semantics and theory only but which does not exist in reality.' *Dyson v. Olin Corp.*, 692 S.W.2d 456, 458 (Tex.1985) (Robertson, J. concurring)." Supra at 649. This is clearly not the thought I expressed in *Dyson*. Even a cursory reading of my concurrence in *Dyson* would reveal that the "distinction which exists in semantics and theory only but which does not exist in reality" was the difference between a court of appeals reviewing the sufficiency of the evidence and a court of appeals substituting its thought processes for that of the jury. *Nowhere* in my concurrence do I differentiate between findings and nonfindings. I find it patently offensive that the majority opinion would attribute to me thoughts and statements which simply do not exist. When one sees such blatant error, one can-

not help but question whether the entirety is plagued by haphazard work.

In conclusion, albeit all the concerns I've expressed here, I remain most concerned about the courts of appeals exercising factual review of a jury verdict on the standards of "insufficiency of the evidence" or "great weight and preponderance of the evidence." While the majority states that the right of trial by jury is not violated by these standards, and that the right should remain inviolate, the practical effect of its decision in this case is to permit the courts of appeals to overturn a jury verdict on such subjective standards. This is paying lip service to the right of trial by jury; it is not a meaningful preservation of the right. Although the majority opinion has a superficially appealing appearance, it lacks insight into the real effect upon the right of trial by jury when a court of appeals reviews a jury verdict upon such lax standards.

I would reverse the judgment of the court of appeals and affirm the judgment of the trial court.

RAY and MAUZY, JJ., join in this dissent.