**Edward D. SELLS, Appellant,**

v.

**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellee.**

No. 12–88–00285–CV.

Court of Appeals of Texas, Tyler.

June 18, 1990.

Rehearing Denied June 18, 1990 and July 31, 1990.

Coy Johnson, Sulpher Springs, Richard J. Clarkson, Beaumont, for appellant.

Mike Hatchell, Tyler, for appellee.

## OPINION ON REHEARING

COLLEY, Justice.

Appellee, Texas Employers' Ins. Association (TEIA), filed a motion for rehearing following our reversal of the judgment below and remand of the cause. By that motion, TEIA assigns twenty-two points of error, claiming we erred in sustaining appellant Edward D. Sells' (Sells) single point of error by which Sells asserted, in part, that the jury's refusal to find that his injury was not sustained during the course and scope of his employment with Westbrook Ready–Mix (Westbrook) was against the great weight and preponderance of the evidence.

A fair summary of these assignments of error is that we applied an incorrect standard of review because: (1) we substituted our judgment for that of the jury respect-

ing the credibility of Sells and his witnesses; (2) we impermissibly took into account TEIA's failure to produce evidence to negate the existence of the ultimate fact at issue in Jury Question 2; (3) we failed to observe the rule that a refusal to find (non-finding) does not require evidentiary support; (4) we failed

to recognize and follow the rule, just announced in *Alm v. Aluminum Co. of America* [sic], [*Aluminum Co. of America ` v. Alm* ] 33 Tex.S.Ct.J. 187 [785 S.W.2d 137] (Jan. 31, 1990), that evidence which the jury could have disbelieved is not legitimately part of ... all the evidence ... the court of appeals may review in considering a weight and preponderance challenge to a failure to find[;]

(5) we failed to consider inferences arising from "undisputed evidence that [Sells'] injury did not occur on or about [July 11] or did not happened (sic) as Sells described it"; (6) the standard of review we applied "violated the due course of law ... the right to trial ... and the open court provisions of [Tex. Const. art. I, §§ 13 and 19] and the 14th Amendment to the Constitution of the United States," and "deprives [TEIA] of the full extent of its rights to trial by jury and to be accorded due process of law ... [sic]" under Tex. Const. art. I, §§ 15 and 19; and (7) we erred in attributing weight to the testimonies of Sells and his witnesses.

Under its arguments, TEIA challenges our authority to reweigh any witness' testimony.

TEIA makes the argument that Sells' testimony that he sustained the injury while driving Westbrook's truck is contradicted by evidence showing that Sells' mobile home had "holes in the floor ..."; therefore, TEIA contends the jury was entitled to infer that Sells was injured by "falling through the floor of his trailer home." Apparently appellate counsel believes that to be the case, but it is not. The photographs [1] of the trailer home relied on by TEIA were never admitted into evidence. Moreover, Sells, when shown the photographs on cross-examination, positively denied the existence of any holes in the

floor of his home during the time that he was living there. He also absolutely denied that he ever fell through the holes in the floor. Trial counsel for TEIA never offered the photographs into evidence, nor were they ever again referred to by him during the trial.[2] Because the record clearly shows the above, appellate counsel's arguments of contradictory evidence are unsupported by the record and without merit.

■ TEIA also assails the credibility of Sells and his witnesses, Dr. O'Neal, Morris Stubblefield, and William Carl Neal, calling their testimonies unreliable, and argues that "the jury was entitled to disregard ..." their entire testimonies, or any portions thereof. TEIA contends that since that is so, this court erred in giving "any weight" thereto. In other words, TEIA takes the position that before we can consider evidence contrary to a jury non-finding, that evidence must be credible and immune to the trial jury's power to disregard it. If that were true, the fact jurisdiction vested in the courts of appeals by Tex. Const. art. V, § 6 would be effectively annulled by a rule of lesser authority. We regard this contention to be totally without merit.

■ TEIA also asserts that in our analysis of the evidence, we took into account the *absence* of evidence that Sells sustained his July 11, 1986, injury *off the job.* That, we most certainly did. The standard of review requires us to do so. But in so doing, we did not hold that a defendant *must* produce evidence in opposition to that of the plaintiff. It is clear under Texas practice that a defendant has no such obligation or burden. However, in our adversarial system, a party not bearing the burden of proof on an issue may, or may not, produce defensive evidence to counter a claim of his adversary. Both the jury and the appellate court must look to *all the relevant evidence adduced*—the jury to make findings of fact—and the appellate court to determine whether there is evidentiary support for those findings or to determine whether the finding (or non-finding) is

---

**1.** Defendant's Exhibits 19 through 24.

**2.** The arguments are not reported.

against the weight and preponderance of the evidence.

TEIA's claim that our *misapplication* of the standard of review deprived it of its right to access to the courts, of due process, and due course of law under the state and federal constitutions is unsupported by citation of authorities and is without merit. We reject these contentions and TEIA's arguments thereunder.

Finding all of TEIA's assignments of error to be without merit, we overrule the motion for rehearing. However, for the sake of clarity and to record our understanding of our responsibility under Tex. Const. art. V, § 6, as construed by *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *Pool v. Ford Motor Company*, 715 S.W.2d 629, 635 (Tex.1986), and *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646 (Tex.1988), we withdraw our original opinion and substitute therefor the following opinion.

In this workers' compensation case, the worker, appellant Edward D. Sells (hereinafter "Sells"), appeals from a take-nothing judgment entered by the trial court on the jury's verdict.

Sells complains in this appeal of the jury's failure to find that he sustained an injury during the course and scope of his employment with his employer/subscriber, Westbrook Ready–Mix (hereinafter "Westbrook"). We reverse and remand.

The jury found, in response to Jury Question 1, that Sells received an injury "on or about July 11, 1986[,]" and refused to find, in response to Question 2, that Sells "[was] injured in the course and scope of his employment ... [with Westbrook]." Sells filed a motion for new trial wherein he alleged that the "[j]ury's [negative] answer to [Jury Question 2] ... was wrong, because the undisputed evidence and or the greater weight and degree of overwhelming preponderance of the evidence was that [Sells] did receive an injury in the course and scope of his employment; ...." The motion for new trial was overruled by the trial court.

Sells, by a single point of error, alleges that "[t]he trial court erred in overruling [his] motion for new trial because the jury's answer to question number two was: (A) not supported by any legally sufficient evidence, (B) not supported by factually sufficient evidence, and (C) against the great weight and overwhelming preponderance of the evidence."

■ In this case, we choose to first address appellant's complaint that the jury's failure to find that his July 11, 1986, injury was sustained in the course and scope of his employment with Westbrook was so contrary to the great weight and preponderance of the evidence as to be manifestly wrong and unjust. This is a proper challenge to that non-finding. *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d at 651. In deciding this point of error, we must consider all of the evidence before the jury, and objectively discuss the same in sufficient detail to demonstrate that we have followed the correct standard of review. *Pool v. Ford Motor Co.*, 715 S.W.2d at 635.

Sells testified that he suffered a back injury on July 11, 1986, while driving a truck for Westbrook. Sells said that as he went over a railroad crossing on FM Road 137 in Paris, his air cushion seat "gave way and hit the bottom [3] and hurt my back." Sells stated that the crossing "was rough." He related specifically that on that particular occasion "the air went off, then the seat hit the bottom. And when it hit the bottom, it hurt my back." However, Sells' physician, Dr. Martin O'Neal, testifying by deposition, said that Sells told him on September 29, 1986:

[T]hat on July 11th of 1986 he was driving a gravel truck returning from Oklahoma, that he crossed a railroad track and the air cushion [seat] was off his seat, and the seat he was sitting on began to jump, and he had a sudden jar to his back, and that the air cushion was unable to stop his weight. And he said he came crashing down on the seat and he had immediate back pain; that the first couple of days after [the event] ...

3. Sells is a large man. He stands 6' 6" tall and weighs 280 lbs.

he attempted to treat this by staying at home in bed,....

Sells' medical records evidence (Plaintiff's Exhibits 3, 4, 5 and 6) reveals that he was admitted to the emergency room of the Hopkins County Memorial Hospital on July 15, 1986, complaining of "back pain" resulting from "Sprain/Strain" of his back from an "Industrial Injury." These records show that upon his admission to Hopkins County Memorial Hospital from the emergency room, Sells reported an "on job injury, occurring on July 11, 1986." These medical records show that Sells was transferred from Hopkins County Memorial Hospital to the Citizens General Hospital on July 27, 1986, by order of Dr. S. Bahm, a surgeon and Sells' then treating physician. Bahm performed back surgery on Sells, an "L4–5 laminectomy and disc excision...." Dr. Bahm recorded a preoperative and post-operative diagnosis that Sells had a "herniated nucleus pulposus, L4–5, right."

The records also reveal that Dr. Somjai Tris recorded in his progress notes that upon Sells' admission to Hopkins County Memorial Hospital, he complained of "severe right lower back pain. This happened after driving a concrete truck over the railroad tracks, which was [sic] bumpy." These medical records also reveal that another consulting physician, Dr. Parker, wrote on October 30, 1986, following his examination of Sells: "The patient reports that he was driving his truck when he ran across a railroad track injuring his back on July 11, 1986."

Morris Earl Stubblefield, a long-time acquaintance and friend of Sells, testified that he took Sells to work on Friday morning, July 11, 1986, and picked him up late Friday afternoon. Stubblefield testified that he saw nothing wrong with Sells that morning, but when he picked him up that afternoon, "he was kind of drawn over. And I asked him ... what in the world is wrong with you." Stubblefield testified that Sells told him "that he had crossed the

railroad track over there at Paris and that air cushion seat was out and he had hit that railroad track, and whenever he did he said his back had been bothering him ever since." Stubblefield also stated that he saw Sells two days later (on July 13, 1986), and that Sells could hardly walk.

William Carl Neal was called by Sells as a witness. Neal related that "approximately two years" before July 11, 1988 (the date of the trial), Sells told him that "the seat had broke, or a hole come in the air bag" when Sells "crossed the railroad tracks." Neal also stated that Sells told him the event occurred on a Monday or a Tuesday.[4]

Steve Westbrook[5] appeared as a witness for TEIA. His testimony contradicted Sells' testimony that Sells reported his injury to Westbrook on Monday, July 14, 1986, but he admitted that Sells did call him from the hospital[6] to inform him of the accident.

Charles Westbrook, a brother of Steve Westbrook and part owner of Westbrook, testified that no repairs were ever made to the air cushion seat in Sells' truck, and that he had received no reports of problems with the seat in Sells' truck. Under Charles Westbrook's sponsorship, business records of Westbrook (Defendant's Exhibit No. 17) were introduced which reflect that no repairs were ever made to the air cushion seat of Sells' truck.

Charles Westbrook testified that on July 16, 1986, he "got hold of [Sells] and talked to him on the phone and got his information, and then went on up there [to the hospital] to make a visit and talk to him about his claim." Charles Westbrook specifically denied that during his conversation with Sells on the telephone that Sells told him "how he claims he hurt himself...." The witness stated that when he went to the hospital to talk to Sells on July 16, he took a blank copy of the Employer's First Report of Injury with him so it could be completed, and he testified:

> I said, [to Sells] okay, here's the question. It says, what safety device was

---

4. July 11, 1986, was a Friday.

5. A part owner of Westbrook in 1986.

6. Sells was hospitalized on Tuesday, July 15, 1986.

used.[7] I said Ed, what can I put there? And he didn't say anything. I said, could it be an air cushion seat? And he said, yes, an air cushion seat. So I wrote air cushion seat.

The witness filled in the blanks on the report in longhand and later had the information typed in the form. The actual exhibit (Plaintiff's Exhibit No. 10) is dated a week later, July 23, 1986, and is typewritten. It thus appears that Sells adopted Charles Westbrook's suggestion to him that the air cushion seat was somehow involved in the occurrence which caused his injury. However, in answer to Question 24 on the exhibit which inquired: "Describe fully how accident occurred, and state what employee was doing when injured," Mr. Westbrook wrote that Sells said: "I was going around Loop 286 in Paris and I went over railroad tracks causing me to pull something in my back."

Innumerable supreme court decisions delivered both before and after the 1891 amendment to Tex. Const. art. V, § 6, articulate sayings like,

> [I]t is the peculiar and exclusive province of the jury to judge of the credibility of witnesses, and to weigh the evidence; and the court will not undertake to disturb the verdict, *unless* the jury appear to have found either without or *against* evidence.... The court will never set aside a verdict as against the evidence merely because they might upon an examination of the evidence have arrived at a result different from that found by the jury. (Emphasis ours.)

*E.g., Edrington v. Kiger, Adm'r.,* 4 Tex. 89, 93–95 (1849); *Missouri Pac. Ry. Co. v. Somers,* 78 Tex. 439, 14 S.W. 779 (1890); *Choate v. San Antonio & Arkansas Pass Ry. Co.,* 91 Tex. 406, 44 S.W. 69 (1898). More recent high court cases[8] have generally approved the standard of review earlier prescribed for consideration of factual insufficiency challenges to the evidence in the immediate courts. The opinion in *In re King's Estate* perhaps best explains that standard. That court wrote:

> The question requires the [courts of appeals], in the exercise of its peculiar powers ... *to consider and weigh all of the evidence in the case and to set aside the verdict* and remand the cause for a new trial, if it thus concludes that the verdict is *so against the great weight and preponderance* of the evidence as to be manifestly unjust—this, regardless of whether the record contains some 'evidence of probative force' in support of the verdict.... *The evidence supporting the verdict is to be weighed along with the other evidence in the case, including that which is contrary to the verdict.* (Emphasis ours.)

After that, the court wrote:

> It is, indeed, not simple to describe the intellectual process to be followed by the [courts of appeals] in passing on the fact question—*to specify just how a verdict may be supported by evidence of probative force and at the same time be on all the evidence so clearly unjust as to require a new trial.* (Emphasis ours.)

> But art. V, § 6, of the Constitution ... *is no more to be ignored than any other part of that document,* and that provision, with the decisions, statutes and rules based upon it, *requires* the [courts of appeals] upon proper assignment, to consider the fact question of weight and preponderance of *all* the evidence and to order or deny a new trial accordingly as to the verdict may thus appear to it clearly unjust or otherwise.... See *Wisdom v. Smith,* [146 Tex. 420, 209 S.W.2d 164, 166 (1948), and also *Choate v. San Antonio & Arkansas Pass Ry. Co.*] (Emphasis ours.)

Thirty-four years after the decision in *In re King's Estate* was delivered, the su-

---

7. Actually, the E–1 form inquires:

> 22. (a) Name the safety appliance or regulation provided _____
> (b) Was it in use at time? _____

8. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951); *Pool v. Ford Motor Company,* 715 S.W.2d 629, 635 (Tex.1986); *Herbert v. Herbert,* 754 S.W.2d 141, 143–144 (Tex.1988); and *Cropper v. Caterpillar Tractor Co.,* 754 S.W.2d 646 (Tex.1988).

preme court reaffirmed[9] the standard enunciated by that case. In *Pool v. Ford Motor Co.*, the court once again reaffirmed the correctness of the *In re King's Estate* standard, but this time the court imposed a format to be followed by the intermediate courts in writing their opinions when that court is deciding a great weight point in favor of reversal. The *Pool* court said:

In order that this court may in the future determine if [the] correct standard of review of factual insufficiency points has been utilized, courts of appeals, when *reversing* on insufficiency grounds, should, in their opinions, *detail* the evidence relevant to the issue in consideration and clearly state *why* the jury's finding is factually insufficient or is so against the *great weight* and preponderance as to be manifestly unjust; why it shocks the conscience; or clearly demonstrates bias. Further, those courts, in their opinions, should state in what regard the contrary evidence *greatly outweighs* the evidence in support of the verdict. It is only in this way that we will be able to determine if the requirements of *In re King's Estate* have been satisfied. (Emphasis ours.)

*Pool*, 715 S.W.2d at 635.

The supreme court revisited *Pool* in *Lofton v. Texas Brine Corp.*, 777 S.W.2d 384, 387 (Tex.1989). In *Lofton,* a case involving a vehicle collision, Justice Doggett, writing for the majority, concluded that the Houston Court of Appeals [14th Dist.] misapplied the *In re King's Estate* standard for reviewing factual insufficiency points by opining *the conclusion,* "[t]herefore the evidence is irrefutable that Lofton jumped in front of Johnson less than two seconds before impact," following the court of appeals' discussion and analysis of what it perceived to be all the relevant evidence. Justice Doggett wrote further to demonstrate why the court of appeals' *"analysis [of the evidence] is incorrect."* But then

stated, "In this review we do not give *every* reason the analysis is incorrect." (Emphasis in original.) To begin "this review," Justice Doggett stated that the conclusion reached by the court of appeals was not established as a matter of law. He summarized the evidence to explain why not, and also wrote that Johnson's [10] testimony "as an interested witness did not establish the fact [stated in the conclusion] as a matter of law." In further analysis of the evidence, Justice Doggett declared that the testimony of Ruble, Texas Brine Corporation's accident reconstruction expert, likewise did not establish the truth of the conclusion as a matter of law, saying Ruble's testimony was "conclusory and not free from internal inconsistency or impeaching circumstances." Justice Doggett then, looking at the record, explained the inconsistencies in Ruble's expert testimony.

After writing the above, Justice Doggett analyzed other evidence in the record stating that Ruble's reliance on the testimony of Johnson, an interested witness, was an additional reason why Ruble's opinion testimony did not establish the truth of the court of appeals' conclusion as a matter of law. Justice Doggett then proceeded to review the evidence that tended to support the jury finding of proximate cause[11] against Johnson and Texas Brine Corp.

Justice Doggett then proceeded to make for the majority of the court his *own analysis* of the evidence, coming close to "second-guessing the courts of appeals in the exercise of their constitutional prerogative to judge the factual sufficiency of the evidence in a case." *Lofton,* 777 S.W.2d at 389 (Hecht dissenting); *see also* 777 S.W.2d at 387–388 (Gonzalez dissenting).

■ Reading *Pool* and now *Lofton,* it appears that a majority of the current Supreme Court seem determined to exercise jurisdiction over fact issues, vested solely in the courts of appeal by Tex. Const. art. V, § 6. In any event, it seems that in

9. In *Dyson v. Olin Corp.,* 692 S.W.2d 456, 457–458 (Tex.1985).

10. The driver of the truck owned by Texas Brine Corp. which collided with the vehicle driven by Lofton.

11. The jury finding challenged by Johnson and Texas Brine Corp. in the court of appeals.

addition to following the format of *Pool*, in consideration of factual insufficiency points of error, we must come up with a reversal and remand that is acceptable to the Supreme Court. However, based on our careful review of all the evidence adduced before the jury, following the standard of review enunciated in *In re King's Estate*, we have heretofore detailed all evidence before the jury which is relevant to the issue submitted by jury question two as required by *Pool*. In further compliance with *Pool*, we shall now demonstrate why *we* conclude that the jury's refusal to find that Sells was injured in the course and scope of his employment was so contrary to the great weight and preponderance of the evidence as to be manifestly wrong and unjust. We make no conclusion that the converse of the negative finding is established as a matter of law, but we do conclude that the non-finding is against the great weight and preponderance of the evidence, considering **all** the evidence, and the reasonable inferences arising therefrom, on both sides of the issue.

As discussed above, the record demonstrates that, aside from the conflict in the evidence that the air cushion seat in Sells' truck failed, the evidence overwhelmingly shows that Sells worked all day on Friday, July 11, 1986. The testimony of Stubblefield is that he took a healthy Sells to work on Friday morning, and picked up a Sells late Friday afternoon who was "drawn over" and two days later was hardly able to walk. The medical records regarding the history of Sells' complaint recite that he was injured while driving a truck over railroad tracks, or in an on-the-job injury, or in an "industrial" accident.

To be sure, on this record it is difficult to understand how the jury could find, on the same evidence, that Sells was injured on July 11, but not during the course and scope of his employment *absent any evidence* even suggesting that he suffered an injury off the job. Nevertheless, since no conflict of findings point is raised by appellant, we reweigh the evidence, and make our analysis upon *consideration only* of all the evidence strictly relevant to the course and scope issue. *Cf. C & R Trans-*

*port, Inc. v. Campbell*, 406 S.W.2d 191, 194–195 (Tex.1966); *Robertson & Mueller v. Holden*, 1 S.W.2d 570, 571 (Tex. Comm'n App.1928, holding approved), and *Texas & N.O.R. Co. v. Owens*, 54 S.W.2d 848, 853–855 (Tex.Civ.App.—Beaumont 1932, writ ref'd).

Even if it is conceded that the air cushion seat made no contribution to Sells' injury, the evidence is overwhelming that he did sustain an injury while driving his employer's truck in the course and scope of his employment. We sustain Sells' point of error, because we conclude that the jury's refusal, in response to Question 2, to find that Sells' injury occurred during the course and scope of his employment with Westbrook, is so contrary to the great weight and preponderance of the evidence as to be manifestly wrong and unjust.

The judgment is reversed and the cause is remanded for a new trial.