Johnson-RN v. Baker-JA 















IN THE
TENTH COURT OF APPEALS
 

No. 10-92-227-CV

     RALPH N. JOHNSON,
                                                                                              Appellant
     v.

     J. A. BAKER, ET UX.,
                                                                                              Appellees
 

From the 12th District Court
Madison County, Texas
Trial Court # 6075
                                                                                                    

O P I N I O N
                                                                                                    

      Appellant Ralph N. Johnson appeals a judgment in favor of plaintiffs J.A. Baker and his wife,
Willie Lee Baker, cancelling certain mineral leases. The jury answered "no" to the following
questions:
            1)Do you find from a preponderance of the evidence that the W.L. Baker No.
1 Well was producing in paying quantities?
 
            2)Do you find from a preponderance of the evidence that a reasonably prudent
operator would, under all the relevant circumstances, for the purpose of
making a profit and not merely for speculation, have continued the
operation of the well, as it was operated?
      Johnson asserts that the trial court erred in denying his motion for an instructed verdict and
his motion for new trial because the evidence was factually insufficient to prove that production
in paying quantities from the gas well, the W.L. Baker No. 1 in Madison County, had ceased and
to prove that a reasonably prudent operator would not have continued to operate the well. We will
affirm the judgment.
      The Bakers are lessors of three oil, gas, and mineral leases on 1,300 acres in Madison
County, Texas. Johnson is the current lessee and operator under the leases in dispute. At the time
the Bakers filed suit in January 1989 to terminate the three leases held by Johnson, the leases were
past their primary terms and were being held by alleged production from the Baker No. 1 well. 
After the Bakers had put Johnson on notice in October 1988 that the leases had terminated as a
result of the well's failure to produce in paying quantities, they sued to terminate the leases. 
      The Bakers claim that Johnson's points of error are multifarious because they combine
challenges to both the legal and factual sufficiency of the evidence. However, the Rules of
Appellate Procedure specifically allow these points to be combined in a single point "if the record
references and argument under the point sufficiently direct the court's attention to the nature of
the complaint made regarding each such issue . . . ." See Tex. R. App. P. 74(d). In addition, we
are bound by the requirement that the briefing rules are to be liberally construed. See id. at 74(d),
(p).
STANDARD AND SCOPE OF REVIEW—SUFFICIENCY OF THE EVIDENCE
      Because the two questions as submitted erroneously placed the burden of proof on Johnson
rather than on the Bakers, Johnson must now attack the jury's failure to answer the questions
affirmatively as if he had borne the burden of proof in the trial court. See Sterner v. Marathon
Oil Co., 767 S.W.2d 686, 790 (Tex. 1989); Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex.
1983). As for Johnson's legal-insufficiency attacks of adverse answers to questions on which he
had the burden of proof, he must demonstrate on appeal that the evidence conclusively established
all vital facts in support of the issue. See Sterner, 767 S.W.2d at 690; Croucher, 660 S.W.2d at
58. In reviewing a "matter of law" challenge, we must first examine the record for evidence that
supports the failure to find, while ignoring all evidence to the contrary. Id. However, if more
than a scintilla of evidence supports the failure to find, then we terminate our matter-of-law
inquiry. See id. But if there is no evidence to support the failure to find, we will then examine
the entire record to determine if the contrary proposition is established as a matter of law. Id.
      As far as his factual-insufficiency claim, Johnson must demonstrate that the jury's negative
answer is against the great weight and preponderance of the evidence. See Croucher, 660 S.W.2d
at 58; Raw Hide Oil & Gas v. Maxus Exploration, 766 S.W.2d 264, 275-76 (Tex. App.—Amarillo
1988, writ denied). We must examine the record to determine if there is some evidence to support
the jury's failure to find; if so, we must then determine by reviewing all the evidence whether the
refusal to find is against the great weight and preponderance of the evidence. See Cain v. Bain,
709 S.W.2d 175, 176 (Tex. 1986); Dyson v. Olin Corp., 692 S.W.2d 456, 457 (Tex. 1985);
Croucher, 660 S.W.2d at 58. We may reverse and remand for a new trial if we conclude that the
non-finding is against the great weight and preponderance of the evidence. See Cropper v.
Caterpillar Tractor Co., 754 S.W.2d 646, 651 (Tex. 1988). However, we must be mindful that
the jury was not convinced by a preponderance of the evidence, and we cannot reverse even
though we may conclude that the evidence preponderates toward an affirmative answer. See
Herbert v. Herbert, 754 S.W.2d 141, 144 (Tex. 1988).
PRODUCTION IN PAYING QUANTITIES
      Because the issues are closely related, we will combine Johnson's two points in our discussion
of the evidence. The phrase "production in paying quantities" in a mineral lease means that "if
a well pays a profit, even small, over operating expenses, it produces in paying quantities, though
it may never repay its costs, and the enterprise as a whole may prove unprofitable." Clifton v.
Koontz, 160 Tex. 82, 325 S.W.2d 684, 690-91 (Tex. 1959). There is no specific time limit
applicable in determining whether production in paying quantities has ceased. Id. at 690. The
jury in this case was given a seventeen-month time period from August 1, 1987, through January
5, 1989, to consider. In the case of a marginal well, the standard by which paying quantities is
determined is whether, under all relevant circumstances, a reasonably prudent operator would, for
the purpose of making a profit and not merely for speculation, continue to operate a well in the
manner in which the well in question was operated. Id. at 691.   To determine paying quantities
according to this standard, the fact-finder must consider all matters that would influence a
reasonable and prudent operator, such as the price for which the lessee is able to sell his product,
the depletion of the reservoir, the relative profitability of other wells in the area, the operating and
marketing costs of the lease, the net profit, a reasonable period of time under the circumstances,
and whether the lessee is holding the lease merely for speculative purposes. Id. The term "paying
quantities" involves not only the amount of production but also the ability to market the product
at a profit. Id. Whether there is a reasonable basis for the expectation of profitable returns from
the well is the test. Id. If the quantity is sufficient to warrant the use of the product in the market,
and the income is in excess of the actual marketing and operating costs, the production satisfies
the term "in paying quantities." Id. 
THE EVIDENCE
      The Bakers' geologist testified that if a well did not produce a profit within a one-year period,
then it was not producing in paying quantities. Johnson testified that to evaluate a well's profit
over a year's time would give a good indication of its commercial viability. He acknowledged
that, if there is no profit over a year's time, then the well is not commercial. 
      Johnson's own testimony reflects that over the twelve-month period from November 1987
through October 1988, the year prior to Baker giving him notice, sales from the well totaled
$5,355.13. This amount included $5,050.50 paid by Pecos Pipeline for 2,980,000 cubic feet of
gas during that twelve-month period and $304.63 made from the sale of condensate. Expenses for
that one-year period, according to Johnson's testimony, totaled $5,815.55. This amount does not
include $3,822.00 in disputed compression charges assessed against the Baker No. 1 during the
relevant period. The total expenses for the twelve-month period in question did include $963.92
in royalties, $2,950 paid to the pumper (Johnson's employee) and depreciation on the oilfield
equipment of $1,500. Johnson admitted that the Baker No. 1 had not produced in paying
quantities during that year. Even without considering the questionable compression charges, the
evidence conclusively established that the Baker No. 1 was not profitable during that one-year
period.
      Moreover, the record shows that Johnson did not timely pay his pumper, Tony Dean. He
wholly failed to pay Earl Sutton, who had an interest in the well, any money from its production. 
Sutton testified that, because he had never received any checks, he had assumed the well had not
been producing since August 1987. Appellee Jim Baker testified that he never received any
royalty payments from Johnson.
      Considering only the evidence supporting the answers, we conclude that more than a scintilla
of evidence supports the jury's failure to find that the well was producing in paying quantities or
that a reasonably prudent operator would have continued operation of the well as it had been
operated. Accordingly, we overrule the matter-of-law challenge. See Sterner, 767 S.W.2d at 690. 
We further conclude, considering all of the evidence, that the negative answers were not against
the great weight and preponderance of the evidence. See Croucher, 660 S.W.2d at 58. We affirm
the judgment.
                                                                                     PER CURIAM

Before Chief Justice Thomas,
      Justice Cummings, and
      Justice Vance
Affirmed
Opinion delivered and file March 31, 1993
Do not publish