TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00628-CV






Endotherm Chemicals, Inc./Hoechst Celanese Corporation, Appellants



v.



Hoechst Celanese Corporation/Endotherm Chemicals, Inc.
, Appellees






FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT


NO. 91-433-C368, HONORABLE BURT CARNES, JUDGE PRESIDING 







 Endotherm Chemicals, Inc. sued Hoechst Celanese Corporation ("Celanese"),
contending that Celanese owed $250,000 on a sworn account. The jury declined to find in
Endotherm's favor, and the trial court awarded Celanese attorney's fees. Endotherm appeals,
contending that the jury instructions were erroneous, the jury's findings are not supported by the
evidence, the trial court erred by not disregarding the jury's answers, and the award of attorney's
fees to Celanese but not to Endotherm was unfounded factually and legally. We will reverse the
award of attorney's fees to Celanese, render judgment that Celanese take nothing on its attorney's
fees claim, and affirm the judgment in all other aspects.


BACKGROUND


 Endotherm, a three-shareholder corporation, created Temper Ease, a fluid intended
to cool industrial drill and cutting bits. Celanese was interested in testing the product to determine
whether it would be useful in its business. Endotherm quoted Celanese a price of $25 per gallon. 
In Celanese's internal requisition prompting that purchase, Celanese employee Helmut Ricke
wrote that the price was "$25.00/gal" but wrote the total price as "1375,--" using European
numeric punctuation. Celanese paid $1375 for fifty-five gallons of the product. Celanese had
problems with the product smoking and creating a foul odor. 

 Endotherm modified its product, creating New Improved Temper Ease or Super
Cool Cut ("NITE"). Endotherm's Russel Daves met with Celanese's Ricke to discuss the revised
product and the possibility of the companies engaging in a joint venture for the product. Because
NITE was not yet patented, Endotherm also wanted secrecy assurances before selling any of the
NITE for testing. Ricke sent Daves a proposed confidentiality agreement and promised to send
a purchase order for ten gallons of NITE. In that same January 11 letter, Ricke asks Daves,
"Have you come to an agreement on the proposed trial joint venture?"

 Thereafter, Celanese issued a purchase order for ten gallons of NITE at $25,000
per gallon, for a total of $250,000. Celanese witnesses contended this was a mistake stemming
from failure to translate correctly from Ricke's internal requisition form in which he used the
European numeric punctuation system rather than the American punctuation system. The two
systems reverse the use of commas and periods in numerals; thus, when Ricke wrote "$25,--" per
gallon and "$250,--" for the total, he meant twenty-five dollars and no cents ($25.00). An
American Celanese employee, however, interpreted the comma as a thousands place marker and
typed twenty-five thousand dollars ($25,000) into the purchase order. 

 Testimony about what happened next diverged widely. There was undisputed
evidence that the parties never discussed a unit price of $25,000 per gallon. There was also
evidence that Celanese employees realized on the first business day after mailing the purchase
order that the $250,000 price was a mistake, called Endotherm and explained the mistake,
received oral verification that the price was $25 per gallon, and sent a revised purchase order with
the $25 per gallon price--all before Endotherm received the original purchase order. Endotherm
shareholders testified, however, that they never received such telephone calls. They testified that
the telephone numbers Celanese employees alleged they called were not functioning numbers at
the time of the calls. Endotherm representatives also testified that Celanese intended the bulk of
the $250,000 to fund patenting and marketing efforts, not simply to buy the ten gallons of NITE. 
Endotherm refused to accept the revised purchase order and eventually filed suit against Celanese
for its failure to pay the full amount of $250,000 under the original purchase order.

 The jury found against Endotherm. It failed to find that Celanese agreed either to
buy ten gallons of NITE at $25,000 per gallon or to pay $250,000 as part of a joint venture; the
jury therefore did not have to consider whether Celanese's failure to pay was excused by
amendment of the agreement, mutual mistake, unilateral mistake, or waiver. The jury found that
Endotherm had no reasonable attorney's fee, but found that the reasonable fee for Celanese's
attorneys' preparation and trial was $25,000 and for subsequent appellate levels was $7,000. 


DISCUSSION


 Endotherm raises twelve points of error. Endotherm attacks the jury's failure to
find that Celanese agreed to purchase NITE for $25,000 per gallon, the jury's finding that
Endotherm deserved no attorney's fees, and the jury's finding that Celanese deserved attorney's
fees. Endotherm challenges the trial court's failure to disregard these actions by the jury, as well
as the court's reformation of the contract.

 Endotherm's first four points of error attack the failure to find that Celanese agreed
to pay $250,000 to Endotherm. The trial court submitted the following as Question 1.


 Did Hoechst Celanese Corporation agree:

 a. to purchase ten (10) gallons of New Improved Temper Ease from Endotherm
Chemicals, Inc. at a price of $25,000 per gallon, for a total purchase of
$250,000? or;


 b. to pay Endotherm Chemicals, Inc., $250,000 as part of a joint venture?

 

 In deciding whether the parties reached an agreement, you may consider
what they said and did in light of the surrounding circumstances, including any
earlier course of dealing. You may not consider the parties' unexpressed thoughts
or intentions.


 If Endotherm Chemicals, Inc, and Hoechst Celanese Corporation agreed to
other essential terms but failed to specify price, it is presumed a reasonable price
was intended.


 There is no agreement unless the party to whom an offer is made accepts
it before knowing that the offer has been withdrawn.



The jury responded negatively to each question. Endotherm contends by point three that the trial
court erroneously placed the burden of proof on appellant. Endotherm contends that the jury's
failure to find that Celanese agreed to pay $25,000 per gallon was supported by no evidence (point
two) and was against the great weight and preponderance of the evidence (point four). Finally,
Endotherm contends by point one that the trial court erred by not disregarding the jury's answer.

 We find no erroneous placement of the burden of proof. Placing the burden as to
a material issue upon the wrong party is generally reversible error. See C. & R. Transport, Inc.
v. Campbell, 406 S.W.2d 191, 194 (Tex.1966). Initially, we note that Question 1 is silent as to
the burden of proof. In the general instructions, the court defined "preponderance of the
evidence" and told the jury it could give affirmative answers only if the preponderance of the
evidence supported such findings, but the court did not tell the jury that Endotherm had to prove
by a preponderance of the evidence there was an agreement. More important, however, is that
placing the burden on the plaintiff, Endotherm, to prove a contract existed was correct. "When
a cause of action is based on breach of contract, the plaintiff must show that a contract existed
between the parties . . . ." Snyder v. Eanes Indep. Sch. Dist., 860 S.W.2d 692, 695 (Tex.
App.--Austin 1993, writ denied). The fact that Endotherm sued on a sworn account did not affect
these burdens because Celanese filed a verified denial. See Tex. R. Civ. P. 185. We find no
support in the record for Endotherm's complaints that the court required it to prove the absence
of mistake; rather, Question 1 required the jury to find whether there was any agreement. 
Whether the evidence supports their answer is the subject of the next points of error. We overrule
point three.


 By point of error two, Endotherm contends that no evidence supports the jury's
negative answer to Question 1a. Of course, the record need not contain evidence to support a
negative answer; a failure to find may simply reflect that the proponent failed to carry its burden
of proof. If Endotherm bore the burden of proof, its argument that no evidence supports the
jury's failure to find implicitly includes the further assertion that it established the existence of the
agreement as a matter of law. See Sterner v. Marathon Oil, 767 S.W.2d 686, 690 (Tex. 1989);
Waring v. Wommack, 945 S.W.2d 889, 893 (Tex. App.--Austin 1997, no pet.). We must first
examine only evidence supporting the jury's verdict; if no evidence supports the failure to find,
then we examine the whole record to determine whether Endotherm established the desired finding
as a matter of law. Sterner, 767 S.W.2d at 690. 

 The record contains conflicting evidence on the first question and thus supports the
jury's failure to find that Celanese agreed to pay $250,000 to Endotherm for ten gallons of NITE. 
Celanese concedes that it sent a purchase order stating that it would pay $25,000 per gallon for
ten gallons of NITE, for a total purchase price of $250,000. But evidence also showed that
Celanese immediately notified Endotherm of the clerical mistake in its order, withdrew the order,
and substituted a corrected one with Endotherm's consent--all before Endotherm received the
original purchase order. The purchase price of the original Temper Ease was $25 per gallon, and
there was evidence that the parties never discussed a unit price of $25,000 per gallon for NITE. 
An Endotherm shareholder and officer testified that he understood how the numeric punctuation
error occurred within Celanese, that $250,000 was not a fair price for ten gallons of NITE, and
that Endotherm was not entitled to $250,000. Because some of the evidence supports the jury's
verdict, we do not consider the contradictory evidence on a no-evidence review. 

 We reject Endotherm's argument that evidence regarding Celanese's claim of
mistake in generating that price is irrelevant to whether Celanese agreed to pay that price. While
such evidence may be primarily relevant to the defensive issue of mistake, evidence of the mistake
also supports Celanese's contention that the $25,000 per gallon price was unilaterally generated
and that Celanese never agreed with Endotherm to pay that price.

 We also reject Endotherm's contention that evidence of the withdrawal of the
original purchase order is irrelevant to the existence of an agreement because the language of the
purchase order and the Business Code prevent oral rescission of this contract. First, as just
discussed, evidence indicates there was no contract to rescind because there was never an
agreement to pay $25,000 per gallon. Thus, the withdrawal of a unilateral offer is relevant to
whether there was an agreement on that offer. We also determine that, even if the original
purchase order was a contract, it could be orally rescinded. The original purchase order states,
"The terms, specifications and drawings included in this order shall constitute the entire
agreement between the parties, unless otherwise stated on the order. No modification or waiver
shall be binding unless in writing, signed by a duly authorized representative of the Buyer and
confirmed by Seller." (Emphasis supplied.) The Code provides that "[a] signed agreement which
excludes modification or rescission except by a signed writing cannot be otherwise modified or
rescinded, but except as between merchants such a requirement on a form supplied by the
merchant must be separately signed by the other party." Tex. Bus. & Com. Code Ann. §
2.209(b) (West 1994) (emphasis supplied). Celanese does not argue that it modified or waived
the original purchase order, but that it wholly rescinded it. The purchase order did not prohibit
or even address rescission; the Business Code restrictions therefore did not apply. Evidence
showing Celanese's withdrawal of the original order before acceptance by Endotherm is relevant
to show the absence of an agreement. 

 We conclude that some evidence supports the failure to find that Celanese promised
to pay $250,000 to Endotherm for ten gallons of NITE. We therefore need not address whether
the opposite proposition is established as a matter of law. We overrule point two.

 By point of error four, Endotherm contends that the failure to find was against the
great weight and preponderance of the evidence. See Cropper v. Caterpillar Tractor Co., 754
S.W.2d 646, 651 (Tex. 1988); Waring, 945 S.W.2d at 893. We must review the entire record,
and may not reverse if the evidence merely preponderates in favor of an affirmative answer to the
question; we may reverse only if the great weight of the evidence supports an affirmative answer
to Question 1a. See Herbert v. Herbert, 754 S.W.2d 141, 144 (Tex. 1988). Endotherm contends
that the original purchase order is the dispositive, conclusive evidence of the parties' agreement. 
Endotherm witnesses denied or could not remember any telephone calls from Celanese employees
attempting to withdraw the original purchase order; Endotherm points to the absence of phone
records and the fact that the number allegedly called was not functioning when calls were
allegedly made. Endotherm rejected the subsequent purchase order using the $25 per gallon price,
insisting on the original price. One Endotherm shareholder testified that another who called the
$25,000 price unreasonable lied because he was disgruntled with the small proposed size of his
share of the $250,000 purchase. (Testimony from shareholders that they thought the $250,000
purchase price included funds to finance patenting and marketing activities applies mainly to the
jury's failure to find affirmatively on Question 1b [regarding a joint venture], which is not
appealed here.)

 When we consider the evidence detailed above favoring the failure to find, we
cannot conclude that the jury's failure to find an agreement to pay $25,000 per gallon for ten
gallons of NITE was against the great weight and preponderance of the evidence. We believe that
the great weight favors the jury's failure to find such an agreement. We overrule point four.

 We also overrule point one, by which Endotherm contends the trial court erred by
failing to disregard the jury's failure to find in its favor. Because factually sufficient evidence
supports the verdict, the trial court would have erred by disregarding the jury's answers.

 By point of error twelve, Endotherm contends that the trial court erred by
reforming the written purchase order agreement. We find no indication in the record that the trial
court reformed the agreement. Rather, the jury found that there was no agreement, and the trial
court awarded judgment to the defendant accordingly. We overrule point twelve.

 By points of error five through seven, Endotherm attacks the jury's finding that
zero dollars was a reasonable attorney's fee for Endotherm's lawyers. Because Endotherm neither
prevailed nor recovered damages, the court would have awarded zero attorney's fees to
Endotherm regardless of the jury's findings on attorney's fees. See Tex. Civ. Prac. & Rem. Code
Ann. § 38.001 (West 1997); see also Green Int'l, Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997). 
The jury's finding of zero attorney's fees was harmless. We overrule points five through seven.

 By points eight through eleven, Endotherm complains of the court's award of
attorney's fees to Celanese. The court awarded attorney's fees in accordance with the jury's
answers to Question 4 regarding reasonable fees. Endotherm contends by point eight that the
court erred by failing to disregard the jury's answers to Question 4 and by point nine that the
court abused its discretion by awarding fees. By points ten and eleven, Endotherm challenges the
legal and factual sufficiency of the evidence supporting the findings. 

 We conclude that the award of attorney's fees to Celanese was error. Celanese
contends on appeal that it was entitled to attorney's fees because it prevailed on its counterclaim
for rescission and defeated Endotherm's claim for $250,000. As Celanese pointed out often,
however, the jury's failure to find that Celanese agreed to pay Endotherm $250,000 meant that
there was no contract. Because there was no contract, there was nothing to rescind; therefore,
Celanese could not and did not prevail on its counterclaim requesting rescission. Nor did
Celanese's successful defense against Endotherm's breach of contract claim entitle Celanese to
attorney's fees. Texas law allows persons in contract and sworn account suits to "recover
reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid
claim and costs." Tex. Civ. Prac. & Rem. Code Ann. § 38.001. While an award of court costs
may be justified under Texas Rule of Civil Procedure 131, Celanese is not entitled to attorney's
fees for defeating a contract action. See Green, 951 S.W.2d at 390.


 We are not persuaded by Celanese's argument that it is entitled to attorney's fees
just as the prevailing counterclaiming defendant was in De La Rosa v. Kaples, 812 S.W.2d 432
(Tex. App.--San Antonio 1991, writ denied). In that case, the plaintiffs paid the defendant
$15,000 toward purchase of a business. Id. Plaintiffs decided not to complete the purchase and
wanted their downpayment back. When the defendant refused to refund it, the plaintiffs sued for
breach of contract and sought rescission; the defendant counterclaimed for rescission. Both
parties recognized a contract but the jury found that the parties had not agreed the plaintiffs could
get a refund, awarded no damages to either side, but awarded attorney's fees to the defendant. 
Id.  The court of appeals concluded that, because both parties claimed the $15,000 downpayment,
the defendant prevailed in the jury's implicit finding that she was entitled to retain the
downpayment. Id. at 435. We question whether the relevant holding in De La Rosa survived the
supreme court's conclusion in Green that a party must be awarded damages to recover attorney's
fees in a contract action. See 951 S.W.2d at 390. We further conclude that De La Rosa is
factually distinct from this case. Though the seller in that case won the right to retain money she
received under the alleged contract, in this case, Celanese merely defended its right to retain
money it possessed before the negotiations. We believe the other cases Celanese cites are also not
controlling. 

 We conclude that Celanese is not entitled to attorney's fees. We therefore sustain
point eight. We need not consider the merits of points nine through eleven.


CONCLUSION


 Having concluded that the trial court erred by awarding Celanese attorney's fees,
we reverse the award of attorney's fees and render judgment that Celanese take nothing on its
attorney's fees claim. We affirm the judgment in all other respects.



 


 Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Kidd and Smith

Affirmed in Part; Reversed and Rendered in Part

Filed: May 11, 2000

Do Not Publish



1997); see also Green Int'l, Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997). 
The jury's finding of zero attorney's fees was harmless. We overrule points five through seven.

 By points eight through eleven, Endotherm complains of the court's award of
attorney's fees to Celanese. The court awarded attorney's fees in accordance with the jury's
answers to Question 4 regarding reasonable fees. Endotherm contends by point eight that the
court erred by failing to disregard the jury's answers to Question 4 and by point nine that the
court abused its discretion by awarding fees. By points ten and eleven, Endotherm challenges the
legal and factual sufficiency of the evidence supporting the findings. 

 We conclude that the award of attorney's fees to Celanese was error. Celanese
contends on appeal that it was entitled to attorney's fees because it prevailed on its counterclaim
for rescission and defeated Endotherm's claim for $250,000. As Celanese pointed out often,
however, the jury's failure to find that Celanese agreed to pay Endotherm $250,000 meant that
there was no contract. Because there was no contract, there was nothing to rescind; therefore,
Celanese could not and did not prevail on its counterclaim requesting rescission. Nor did
Celanese's successful defense against Endotherm's breach of contract claim entitle Celanese to
attorney's fees. Texas law allows persons in contract and sworn account suits to "recover
reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid
claim and costs." Tex. Civ. Prac. & Rem. Code Ann. § 38.001. While an award of court costs
may be justified under Texas Rule of Civil Procedure 131, Celanese is not entitled to attorney's
fees for defeating a contract action. See Green, 951 S.W.2d at 390.


 We are not persuaded by Celanese's argument that it is entitled to attorney's fees
just as the prevailing counterclaiming defendant was in De La Rosa v. Kaples, 812 S.W.2d 432
(Tex. App.--San Antonio 1991, writ